# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2013

Lyle W. Cayce
Clerk

No. 11-20881

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JORGE CABECERA RODRIGUEZ, also known as Jorge Cebecera, also known as Jorge Paul Cabecera, also known as Jorge P. Cabecera,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. No. 4:11-CR-500-1

Before STEWART, Chief Judge, and  KING, JOLLY, DAVIS, JONES, SMITH, DeMOSS, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, and HIGGINSON, Circuit Judges.

JENNIFER WALKER ELROD and STEPHEN A. HIGGINSON, Circuit Judges, joined by STEWART, Chief Judge, and KING, JOLLY, DAVIS, SMITH, DeMOSS, CLEMENT, PRADO, and SOUTHWICK, Circuit Judges:

Jorge Cabecera Rodriguez ("Rodriguez") pleaded guilty to illegal reentry after deportation in violation of 8 U.S.C. § 1326 and was sentenced to twenty-three months of imprisonment.  Rodriguez now challenges his sentence, arguing that it was error for the district court to apply a sixteen-level "crime of violence" enhancement based on a prior Texas conviction for sexual assault of a child.  We

AFFIRM Rodriguez's sentence, and in so doing, we adopt a plain-meaning approach to the "crime of violence" enhancements of "sexual abuse of a minor" and "statutory rape" under U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii) [hereinafter "U.S.S.G."]. Under this approach, we hold that for the purposes of the crime-of-violence enhancement under § 2L1.2(b)(1)(A)(ii), the meaning of "minor" in "sexual abuse of a minor" is a person under the age of majority—which we conclude to be eighteen. We also hold that the age of consent for the purposes of "statutory rape" is the age of consent as defined by statute in the jurisdiction where the prior conviction was obtained. More specifically, under this plain-meaning approach, we proceed with the following four steps: First, we identify the undefined offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. If not, we proceed to step two, and determine whether that undefined offense category is an offense category defined at common law, or an offense category that is not defined at common law. Third, if the offense category is a non-common-law offense category, then we derive its "generic, contemporary meaning" from its common usage as stated in legal and other well-accepted dictionaries. Fourth, we look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category. This plain-meaning approach is faithful to the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 597 (1990), but does not impose a cumbersome methodological requirement on lower courts to conduct a nationwide survey and look to the majority of state codes—as well as the Model Penal Code, federal law, and criminal law treatises—when deriving the meaning of an undefined offense category enumerated in a federal sentencing enhancement.

## I. Procedural Background

Rodriguez was charged with illegal reentry after deportation following

conviction of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2), and pleaded guilty without the benefit of a plea agreement. After the district court accepted Rodriguez's plea, it ordered the preparation of a Presentence Investigation Report ("PSR"). The probation officer determined that Rodriguez had a base offense level of eight. The probation officer recommended that Rodriguez's base offense level be increased by a sixteen-level "crime of violence" enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Rodriguez had been deported following a 2003 conviction for sexual assault of a child under Texas Penal Code § 22.011(a)(2). From this adjusted offense level of twenty-four, Rodriguez received a three-level reduction pursuant to U.S.S.G. § 3E1.1 for his prompt acceptance of responsibility. Accordingly, Rodriguez had a total offense level of twenty-one. Rodriguez received four criminal history points from his two prior adult criminal convictions,[1] which resulted in a criminal history category of III. Rodriguez was subject to an imprisonment range of forty-six to fifty-seven months under the Guidelines based on his offense level of twenty-one and criminal history category of III.

Before the sentencing hearing, Rodriguez filed a written objection to the probation officer's recommendation of the sixteen-level enhancement pursuant to § 2L1.2(b)(1)(A)(ii). Rodriguez argued, as he does before this court, that his conviction under Texas Penal Code § 22.011(a)(2) is not a "crime of violence" under § 2L1.2(b)(1)(A)(ii) because that statute criminalizes conduct that falls outside of the "generic, contemporary meaning" of "statutory rape" and "sexual abuse of a minor." Specifically, he argued that the generic definitions of both offense categories require that the victim be under sixteen years of age and that the defendant be at least four years older than the victim. Rodriguez contended

---

[1] Rodriguez was sentenced to two years of imprisonment for his 2003 Texas conviction for sexual assault of a child, resulting in three criminal history points, and was sentenced to thirty days of imprisonment for his 2008 Texas conviction for reckless driving, resulting in one criminal history point.

that because § 22.011(a)(2) applies to victims under seventeen years of age and requires only a three-year age differential, the statute is broader than these generic definitions. He also maintained that the victim was sixteen years old at the time of the offense, and that he was nineteen years old at the time.[2] Rodriguez explained that without these enhancements, he would have a total offense level of ten[3] and, therefore, the Guidelines range would be ten to sixteen months. He also argued that a downward departure from the Guidelines was appropriate because of his cultural assimilation and the fact that his criminal history overstated the seriousness of his prior convictions.

At the sentencing hearing, the district court first discussed Rodriguez's objection to the sixteen-level "crime of violence" enhancement. Specifically, the district court asked Rodriguez's counsel whether any precedent supported Rodriguez's position that his 2003 conviction for sexual assault of a child under Texas Penal Code § 22.011(a)(2) was not a "crime of violence." Rodriguez's counsel expressly acknowledged that under our precedent, the district court lacked the ability to conclude that Rodriguez's conviction was not a "crime of violence." In response, the district court noted that although such a concession might tie its hands with respect to Guidelines application, it retained the

---

[2] The record contains support that the victim opposed sexual conduct that Rodriguez initiated. The PSR, which was adopted by the district court, stated "[t]he complainant alleged that she tried to push the defendant off her, but was unable to move him." We acknowledge that the victim's sworn affidavit filed in support of Rodriguez as an attachment to the PSR contains ambiguous statements, some of which indicate consent. We note, however, that under *Taylor* and its progeny, it is unclear whether we would be permitted to consider these facts to conclude that Rodriguez's offense qualified for a crime-of-violence enhancement under U.S.S.G. § 2L1.2. This problem is a demonstration of the confusion and gymnastics that result from the categorical and modified-categorical approaches in their current form. Perhaps, the Supreme Court will provide clarity on this issue this Term in *Descamps v. United States*, 133 S. Ct. 90 (2012) (granting certiorari). Nevertheless, we leave this issue for another day because, as explained *infra*, we may affirm Rodriguez's sentence on the basis of either the "sexual abuse of a minor" or the "statutory rape" offense categories.

[3] Rodriguez's base offense level of eight, increased four levels pursuant to U.S.S.G. § 2L1.2(b)(1)(D) because of his prior felony conviction, decreased two levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), results in an offense level of ten.

discretion to consider a departure from the Guidelines or a variance under 18 U.S.C. § 3553(a).

Following this statement, the discussion at the sentencing hearing turned to consideration of the district court's discretion to grant a variance from the Guidelines. Initially, the district court asked the government about its position on the appropriateness of a variance under § 3553(a). The government agreed that a variance was appropriate on the facts of this case and recommended a three-level variance—lowering the offense level from twenty-one to eighteen, resulting in a Guidelines range of thirty-three to forty-one months.

The district court then asked Rodriguez whether he agreed with the government's suggested three-level variance. Rodriguez's counsel expressed appreciation for the government's willingness to acknowledge that a Guidelines sentence would be inappropriate, but argued that the appropriate variance would be to treat Rodriguez's conviction as a felony rather than as a "crime of violence." Rodriguez's counsel explained that with this suggested variance, the adjusted offense level would be ten, resulting in a Guidelines range of ten to sixteen months. Under this range, Rodriguez's counsel recommended a sentence of one year and a day. The government responded to this recommendation by reiterating its position that a sentence between thirty-three and forty-one months would be appropriate, contending that a lower sentence would not adequately address Rodriguez's conviction for sexual assault of a child. Following this response by the government, the district court acknowledged that it was bound by precedent, as Rodriguez's counsel conceded, to overrule Rodriguez's objection that his offense did not constitute "statutory rape" or "sexual abuse of a minor" under § 2L1.2.[4] After overruling his objections, the district court calculated his Guidelines range of forty-six to fifty-seven months.

---

[4] Accordingly, we can affirm the application of the sixteen-level crime-of-violence enhancement if the offense defined in Texas Penal Code § 22.011(a)(2) constitutes "statutory rape" or "sexual abuse of a minor" for purposes of § 2L1.2(b)(1)(A)(ii).

The district court, however, explicitly noted that despite its conclusion that the Guidelines range was forty-six to fifty-seven months, a variance was appropriate and requested further argument on the appropriate sentence to impose. Rodriguez's counsel continued by arguing that one year and a day was the appropriate sentence considering his significant cultural assimilation. Rodriguez also made a statement on his own behalf, which acknowledged that he knew it was a crime to return to the United States but explained that he returned "with the best intentions with being with my family and helping them out." The government declined the opportunity to provide further argument.

After hearing all arguments by Rodriguez and the government, the district court explained:

> All right. Unfortunately, you're both right. He was convicted. It's an unusual set of circumstances that appear to have given rise to that conviction, and I credit the government for recognizing that this should not be treated in a literal or sort of hand-fisted way as a crime of violence under 3553(a). I agree that under 3553(a) there does need to be a lower sentence than the guidelines would otherwise call for. The extent of the variance is the issue of course. Putting all of the factors together, including culture assimilation and the fact that this is, I guess, the third time the defendant has returned after being deported, which cuts in the other direction, and that he has a conviction and these circumstances giving rise to it, appears the appropriate 3553(a) sentence would be 24 months, with another month off of that to reflect the ICE custody for which he would otherwise not receive credit, which is a total sentence of 23 months. That is less than the government asked for. It's somewhat more than the defendant asked for. But the Court believes that it does address all of the 3553(a) factors in the appropriate way.

The Statement of Reasons ("SOR"), which the district court filed a few days after the sentencing hearing, reflected the district court's explanation at the sentencing hearing that it was adopting the PSR without change, but imposing a sentence outside the advisory Guidelines system. Specifically, the district court checked the box indicating that "the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18

6

U.S.C. § 3553(a)(1)" justified the selection of a sentence outside the advisory Guidelines system.

On appeal, Rodriguez argues that Texas Penal Code § 22.011(a)(2) was overbroad because it set the age of consent too high and required an age differential that was too low. A panel of this court rejected Rodriguez's arguments with respect to the age of consent as foreclosed by circuit precedent, noting that this court had previously held that the offense under § 22.011(a)(2) constitutes both "statutory rape" and "sexual abuse of a minor"—both of which are enumerated as "crimes of violence" for purposes of § 2L1.2(b)(1)(A)(ii). *United States v. Rodriguez*, 698 F.3d 220 (5th Cir.), *vacated and reh'g en banc granted by* 701 F.3d 1080 (5th Cir. 2012) (per curiam). The panel rejected his argument with respect to the age-differential issue on the ground that there is substantial disagreement across the states about the age difference required between the victim and the defendant. *Id.* The panel concurrence called attention to "confusion in our case law" over our inconsistent determinations of the "generic, contemporary meaning" of "minor" in the context of the "sexual abuse of a minor" and "statutory rape" offense categories in the § 2L1.2 enhancement. *Id.* at 227. Rodriguez subsequently sought and obtained en banc review.

## II. Discussion

Under *Gall v. United States*, we review a sentencing decision for reasonableness regardless of whether the sentence imposed is inside or outside the Guidelines range. 552 U.S. 38, 51 (2007). In conducting this review, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . ." *Id.* If the district court's sentencing decision is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* In this case, Rodriguez contends only that the district court committed procedural error by improperly calculating the

7

Guidelines range. He does not argue that the twenty-three-month sentence was substantively unreasonable.[5]

Rodriguez claims that it was error for the district court to impose a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) for a crime of violence based on his prior conviction for sexual assault of a child under Texas Penal Code § 22.011(a)(2). The Texas statute defines "child" as a person under the age of seventeen. TEX. PENAL CODE § 22.011(c)(1). In Rodriguez's view, the offense categories of "sexual abuse of a minor" and "statutory rape" enumerated in the § 2L1.2(b)(1)(A)(ii) enhancement require a victim under the age of sixteen. We disagree, and hold that for the purposes of "sexual abuse of a minor" in the § 2L1.2 enhancement, the "generic contemporary meaning" of "minor" is a person under the age of majority—which we conclude to be eighteen. Moreover, the age of consent for the purposes of "statutory rape" in § 2L1.2 is the age of consent as defined by statute in the jurisdiction where the prior conviction was obtained.[6]

---

[5] Following *United States v. Booker*, we review sentences for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). 543 U.S. 220 (2005). We have held that "[a] non-Guideline[s] sentence" is unreasonable "(1) where it does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006) (citations omitted). Based on our review of the record, we find no basis for overturning the district court's discretion in selecting Rodriguez's sentence because: (1) the factors the district court considered in selecting Rodriguez's sentence were all relevant, proper factors; (2) there are no other factors relating to Rodriguez that should have received significant weight; and (3) the district court did not err in balancing the sentencing factors.

[6] We recognize that our approach today conflicts with our approach in *United States v. Lopez–DeLeon*, in which we relied on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the "generic, contemporary meaning" of the age of consent was sixteen for the purposes of the "statutory rape" category in § 2L1.2. 513 F.3d 472, 474–75 (5th Cir. 2008). It also conflicts with our approach in *United States v. Munoz–Ortenza*, in which we looked to definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the "generic, contemporary meaning" of "minor" was sixteen for the purposes of applying the "sexual abuse of a minor" category in § 2L1.2 to prior convictions involving oral copulation. 563 F.3d 112, 114–16 (5th Cir. 2009). We have relied on both *Lopez–DeLeon* and *Munoz–Ortenza* in subsequent cases to hold that state statutes involving sexual crimes with persons over the age of sixteen are too broad to categorically constitute either "statutory rape" or "sexual abuse of a minor" under § 2L1.2. *See, e.g.*, *United States v.*

8

A defendant convicted of illegal reentry is subject to a Guidelines enhancement if he was convicted of a "crime of violence" prior to his removal or deportation.  U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The application notes to § 2L1.2 define "crime of violence" as one of several enumerated offense categories, including "sexual abuse of a minor" and "statutory rape."[7]  *Id*. § 2L1.2 cmt. n.1(B)(iii).  We review *de novo* whether a prior conviction qualifies as a crime of violence within the meaning of the Guidelines.  *United States v. Hernandez–Galvan*, 632 F.3d 192, 196 (5th Cir. 2011) (citation omitted).

When determining whether a prior conviction qualifies as a crime of violence under the Guidelines, we have been using the categorical approach that the Supreme Court first outlined in *Taylor v. United States*, 495 U.S. 575 (1990).  Under the categorical approach, the analysis is grounded in the elements of the statute of conviction rather than a defendant's specific conduct.[8]  *See United*

---

*Chavez–Hernandez*, 671 F.3d 494, 499–500 (5th Cir. 2012).  In light of today's holding, these prior decisions are no longer valid precedent to the extent that they use approaches other than a plain-meaning approach to define the "generic, contemporary meaning" of the "statutory rape" and "sexual abuse of a minor" offense categories in § 2L1.2.

[7] Application note 1 of § 2L1.2 defines "crime of violence" as:

> [A]ny of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

[8] In limited circumstances, we may take a modified categorical approach to determine "whether a plea of guilty to [an enumerated offense] defined by a nongeneric statute necessarily admitted elements of the generic offense" by looking only to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26

*States v. Calderon–Pena*, 383 F.3d 254, 257 (5th Cir. 2004) (en banc) (citations omitted). To the extent that *Taylor* continues to be instructive beyond its specific statutory context, we then will interpret the meaning of an undefined offense category in the Guidelines "according [to] its 'generic, contemporary meaning,' and rely on a uniform definition regardless of the 'labels employed by the various States' criminal codes.'" *United States v. Dominguez–Ochoa*, 386 F.3d 639, 642–43 (5th Cir. 2004) (quoting *Taylor*, 495 U.S. at 592, 598). The Guidelines do not define "sexual abuse of a minor" or "statutory rape" under § 2L1.2, so the crux of this case is the "generic, contemporary meaning" of: (1) the term "minor" in "sexual abuse of a minor,"[9] and (2) the age of consent required for "statutory rape."[10]

---

(2005); *United States v. Miranda–Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012) (citation omitted) ('We may take a modified categorical approach, permitting consultation of the allegations in the charging instrument, if the statute of conviction has disjunctive elements.').

[9] Rodriguez does not challenge the "generic, contemporary meaning" of "sexual" or "abuse" in the "sexual abuse of a minor" offense category under the § 2L1.2 enhancement.

[10] We agree with Judge Owen that the language of the Guidelines enhancement at issue and its applicable commentary should always be the starting point when deriving the meaning of an undefined Guidelines term. We disagree with her characterization of our approach as looking to dictionary definitions first, and in so doing, transferring the vital function of the Judiciary to dictionary authors. In fact, our analysis explicitly uses the plain terms of the § 2L1.2 enhancement and its applicable commentary as the starting point—as any plain-meaning approach would. We view a plain-meaning approach—by first looking to the Guidelines themselves, then the relevant statutes at issue, and then definitions in legal and other well-accepted dictionaries when necessary—as the best method to derive the "generic, contemporary meaning" of undefined, non-common-law offense categories. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (1st ed. 2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation. It governs constitutions, statutes, rules, and private instruments."). We are not alone in the struggle to define the meaning of these offense categories. As set forth *infra*, circuits have concluded that the meaning of these offense categories is unclear from the Guidelines and commentary themselves, and have adopted divergent methods to derive their meaning which, we believe, coheres persuasively in the plain-meaning approach we refine and offer. *Compare United States v. Ramirez–Garcia*, 646 F.3d 778, 782–83 (11th Cir. 2011), *United States v. Lopez–Solis*, 447 F.3d 1206–07 (9th Cir. 2006), *United States v. Londono–Quintero*, 289 F.3d 147, 153–54 (1st Cir. 2002), *and United States v. Martinez–Carillo*, 250 F.3d 1101, 1104 (7th Cir. 2001), *with United States v. Rangel–Castaneda*, ___ F.3d ___, 2013 WL 829149, at *5 (4th Cir. Mar. 7, 2013).

Deriving the "generic, contemporary meaning" of an offense category enumerated in the Guidelines is challenging because *Taylor* and its progeny do not specify whether we must use a particular method when engaging in a *Taylor* analysis. For these reasons, we have found it difficult to apply *Taylor*'s categorical approach.

The parties' arguments illustrate our methodological inconsistencies when applying *Taylor*. In some cases, we have taken a plain-language approach and relied primarily on dictionary definitions to derive the "generic, contemporary meaning" of offense categories enumerated in the Guidelines. *See*, *e.g., United States v. Izaguirre–Flores*, 405 F.3d 270, 275–76 (5th Cir. 2005) (using definitions of "sexual abuse" in Black's Law Dictionary and Webster's Third New International Dictionary to define the "generic, contemporary meaning" of "sexual abuse of a minor" for the purposes of the crime-of-violence enhancement in § 2L1.2); *United States v. Zavala–Sustaita*, 214 F.3d 601, 604 (5th Cir. 2000) (relying on definitions of "sexual" and "abuse" in The American Heritage Dictionary to determine the generic meaning of "sexual abuse of a minor" for the purposes of the aggravating felony sentencing enhancement in § 2L1.2). In other cases, we have looked to definitions in various state codes, federal law, the Model Penal Code, and criminal law treatises. *See*, *e.g., Munoz–Ortenza*, 563 F.3d at 114–16 (relying on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the "generic, contemporary meaning" of "minor" was sixteen for the purposes of applying the "sexual abuse of a minor" category in § 2L1.2 to prior convictions involving oral copulation); *Lopez–DeLeon*, 513 F.3d at 474–75 (relying on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the "generic, contemporary meaning" of the age of consent was sixteen for the purposes of the "statutory rape" category in § 2L1.2). The use of these different approaches has created challenges for the bench and the bar. Further, our efforts have yielded results at odds with our sister circuits' conclusions. *See*, *e.g., United States v.*

*Montenegro–Recinos*, 424 F.3d 715, 717–18 (8th Cir. 2005).[11]  Therefore, we take this opportunity to clarify the method by which we determine the "generic, contemporary meaning" of an enumerated offense category when engaging in a *Taylor* analysis.[12]

Three different methods of determining the "generic, contemporary meaning" of offense categories enumerated in federal sentencing enhancements have emerged among the circuits.  First, the majority of circuits have taken a plain-language approach, relying on the common meaning of terms as stated in legal and other well-accepted dictionaries.[13]  Second, some circuits have taken

---

[11] The Eighth Circuit in *Montenegro–Recinos* explained:

> We have no difficulty concluding . . . that a fourteen- or fifteen-year-old child has not reached the age of majority, which is eighteen years of age in most states.  *See United States v. Martinez–Carillo*, 250 F.3d 1101, 1104–05 (7th Cir. 2001), *cert. denied*, 534 U.S. 927 (2001) (and cases cited therein).  Although the term "minor" is not specifically defined in § 2L1.2, other provisions of the sentencing guidelines, including the guideline for "criminal sexual abuse," *see* U.S.S.G. § 2A3.1 comment. (n.1), repeatedly and consistently define a minor as a person under eighteen years of age. *See, e.g.*, U.S.S.G. §§ 2A3.4 comment. (n.1); 2G2.1 comment. (n.1); *see also* 18 U.S.C. § 2256(1).

*Id.* at 717–18.

[12] We agree with Judge Haynes that, ultimately, the United States Sentencing Commission has the power, and the empirical competence, to appropriately address the frustration and complexity perplexing this area of the law.  As Judge Owen observes, the Sentencing Commission provided such clarification in light of our struggle to define the intended meaning of "forcible sex offense" in § 2L1.2.

[13] In various cases, the First, Seventh, Eighth, and Tenth Circuits have applied this plain-meaning approach to define the "generic, contemporary meaning" of undefined offense categories enumerated in the Guidelines.  *See, e.g.*, *Londono–Quintero*, 289 F.3d at 153–54 (relying on the plain meaning of "sexual" and "abuse" as stated in Random House Webster's Unabridged Dictionary to define the meaning of "sexual abuse of a minor" in the aggravated felony enhancement in U.S.S.G. § 2L1.2(b)(1)(A)); *Martinez–Carillo*, 250 F.3d at 1104 (looking to the definition of "minor" in Black's Law Dictionary to define the generic meaning of "sexual abuse of a minor" in the "aggravated felony" enhancement under § 2L1.2); *United States v. Graham*, 982 F.2d 315, 316 (8th Cir. 1992) (looking to the definition of "dwelling" in Black's Law Dictionary to define the generic meaning of "burglary of a dwelling" in the § 4B1.1 crime-of-violence enhancement); *United States v. Romero–Hernandez*, 505 F.3d 1082, 1087–88 (10th Cir. 2007) (looking to the dictionary definition of "sex offense" in Black's Law Dictionary to

a multi-source approach, deriving the generic meaning of an offense category from the various state codes, the Model Penal Code, federal law, and criminal law treatises.[14]   Finally, the Ninth and Eleventh Circuits have adopted a mixed-method approach, distinguishing between: (1) traditional offense categories that are defined at common law and (2) non-traditional offense categories that are not defined at common law.[15]   To determine the generic

define the generic meaning of "forcible sex offense" in the § 2L1.2 crime-of-violence enhancement). We note that the Fourth Circuit has also applied this plain-meaning approach to define the "generic, contemporary meaning" of "sexual abuse of a minor" in § 2L1.2. *United States v. Diaz–Ibarra*, 522 F.3d 343, 348–49 (4th Cir. 2008) (relying on the "common meaning" of the words "sexual" and "minor" as stated in Webster's Third New International Dictionary to define the meaning of "sexual abuse of a minor" in the § 2L1.2 crime-of-violence enhancement). Recently, however, the Fourth Circuit veered from this plain-meaning approach, and looked to the majority of state codes to conclude that the "generic, contemporary meaning" of the age of consent is sixteen for the purposes of "statutory rape" in § 2L1.2. *Rangel–Castaneda*, ___ F.3d ___, 2013 WL 829149, at *5. This recent opinion is puzzling in that it recognizes that the simple strategy of "counting noses" will not work in all cases, acknowledges that states retain discretion to define the offense of statutory rape how they see fit, yet still relies on a state-by-state survey to define the "generic, contemporary meaning" of "statutory rape" in § 2L1.2. *Id.* In our view, this inconsistent rationale makes our court's harmonizing approach all the more important.

[14] The D.C. and Third Circuits have applied this multi-source approach to define the "generic, contemporary meaning" of undefined offense categories enumerated in the Guidelines. *See, e.g.*, *United States v. De Jesus Ventura*, 565 F.3d 870, 876–77 (D.C. Cir. 2009) (looking to definitions in the various state codes, the Model Penal Code, and federal law to define the generic meaning of "kidnapping" in the § 2L1.2 crime-of-violence enhancement). *Compare United States v. Marrero*, 677 F.3d 155, 165–66 (3d Cir. 2012) (looking to the Model Penal Code, state laws, and criminal law treatises to reach a generic definition of "murder" in U.S.S.G. § 4B1.1)*, with United States v. McClenton*, 53 F.3d 584, 587 (3d Cir. 1995) (relying on the dictionary definition of "dwelling" to define the generic meaning of "dwelling" in "burglary of a dwelling").

[15] In numerous cases, the Ninth and Eleventh Circuits have applied this mixed-method approach to define the "generic, contemporary meaning" of offense categories enumerated in the Guidelines. *See, e.g.*, *United States v. Corona–Sanchez*, 291 F.3d 1201, 1204 (9th Cir. 2002) (en banc), *superseded on other grounds by* U.S.S.G. § 2L1.2 cmt. n.4 (2002) (explaining that the Ninth Circuit employs two different methods to derive the meaning of offense categories enumerated in sentencing enhancements depending on whether those categories reflect traditional offense categories defined at common law or non-traditional offense categories not defined at common law); *Lopez–Solis*, 447 F.3d at 1201, 1206–07 (characterizing "sexual abuse of a minor" as a non-traditional offense category and relying on dictionary definitions of "sexual" and "minor" to derive its generic meaning); *Ramirez–Garcia*, 646 F.3d at 782–83 (characterizing "sexual abuse of a minor" as a non-traditional offense category and

meaning of traditional offense categories, they look to the various codes, the Model Penal Code, federal law, and criminal law treatises. For non-traditional offense categories, they rely on the common meaning of terms as stated in legal and other well-accepted dictionaries.

Today, we join the First, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits and adopt a plain-meaning approach when determining the "generic, contemporary meaning" of non-common-law offense categories enumerated in federal sentencing enhancements. Under this approach, our application of *Taylor*'s categorical approach to a prior state conviction proceeds in the following four steps: First, we identify the undefined offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. If not, we proceed to step two, and determine whether that undefined offense category is an offense category defined at common law, or an offense category that is not defined at common law.[16] Third, if the offense

---

relying on definitions in Webster's Third New International Dictionary and Black's Law Dictionary "to give words their plain meaning that comports with common usage" (citing *Padilla–Reyes*, 247 F.3d at 1163).

[16] Under this approach, we may resort to many sources, including criminal law treatises, to determine whether an enumerated offense category is defined at common law or not. We acknowledge that identifying offense categories that are defined at common law—and those that are not—is not always an easy task. However, the Supreme Court engaged in that task in *Taylor*, 495 U.S. at 592–96; and the task will not risk wading into any multiplicity of early English law inasmuch as the enumerated offenses in question number only twelve, and the considerable number of those twelve are common law offenses. LaFave notes that one technique that is commonly used to determine whether an offense qualifies as a common-law crime "is to look at books by recognized writers on English crimes, especially Blackstone, to determine the existence and definition of a common law crime." *Criminal Law*, § 2.1(e) (5th ed. 2010). Moreover, "[i]f the court finds an English case directly in point decided before 1607 (or, in some states, 1775), holding that the activity in question constituted a common law crime, clearly this would qualify as a common law crime." *Id*.

To facilitate the application of this method to future cases, we note LaFave identifies the following felonies at common law: murder, suicide, manslaughter, burglary, arson, robbery, larceny, rape, sodomy and mayhem. *Id*. § 2.1(b). He identifies the following misdemeanors at common law: assault, battery, false imprisonment, libel, perjury, and intimidation of jurors. *Id*. Moreover, Blackstone's Commentaries recognizes the following common-law offenses:

category is a non-common-law offense category, then we derive its "generic, contemporary meaning" from its common usage as stated in legal and other well-accepted dictionaries.[17] Fourth, we look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category.

We adopt this approach based on our close review of *Taylor*. In *Taylor*, the

---

obstructing process, receiving stolen goods, conspiracy, perjury, bribery, extortion [categorized as offenses against public justice], 4 William Blackstone, Commentaries on the Laws of England 127–41 (1st American ed. 1772) (reprint 1992); suicide, murder, manslaughter [homicide], *id.* at 176–204; mayhem, abduction, rape, assault, false imprisonment, kidnapping [offenses against the persons of individuals], *id.* at 205–19; arson, burglary [offenses against the habitations of individuals]; *id.* at 220–29; larceny/theft, robbery, malicious mischief, forgery [offenses against private property], *id.* at 229–47.

[17] We limit our holding today to offense categories that are not defined at common law. Accordingly, our precedent that looks to definitions in the variety of state codes, the Model Penal Code, federal law, and criminal law treatises to define the "generic, contemporary meaning" of offense categories defined at common law remains intact. *See, e.g.*, *United States v. Esparza–Perez*, 681 F.3d 228, 229–30 (5th Cir. 2012) (looking to the Model Penal Code, LaFave and Scott treatises, modern state codes, and dictionary definitions to derive the "generic, contemporary meaning" of "aggravated assault" in the U.S.S.G. § 2L1.2 enhancement); *United States v. Gonzalez–Ramirez*, 477 F.3d 310, 317–18 (5th Cir. 2007) (looking to the Model Penal Code, modern state codes, and LaFave's criminal law treatise to derive the "generic, contemporary meaning" of "kidnapping" in the § 2L1.2 enhancement). We leave the mechanics of how we derive the "generic, contemporary meaning" of common-law offense categories for another day. Further, we emphasize that our decision today cannot resolve all of the confusion that originates from the lack of guidance on how to apply *Taylor*'s categorical approach across different offense categories. We stress, however, that bringing our case law involving non-common-law offense categories in line with the majority of circuits fosters uniformity in the application of *Taylor*'s categorical approach. Most recent Federal Judicial Caseload Statistics report that just almost two-thirds (63%) of the total federal criminal appeals commenced annually originate from the circuits that take now a plain-meaning approach when deriving the "generic, contemporary meaning" of non-common-law offense categories—including the First, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits. *See* Administrative Office of the United States, Federal Judicial Caseload Statistics 2011, tbl. B-1: U.S. Courts of Appeals—Appeals Commenced, Terminated, and Pending, by Circuit During the 12-Month Period Ending March 31, 2011 (March 31, 2011) (available at http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStat istics/2011/tables/B01Mar11.pdf). Almost one half (44%) of the total criminal appeals originate from the Fifth, Ninth, and Eleventh Circuits alone. *See id.* (reporting a total of 12,578 criminal appeals commenced in all circuits between March 31, 2010 and March 31, 2011, and of those appeals, 2,489 commenced in the Fifth Circuit, 1,609 commenced in the Ninth Circuit, and 1,501 commenced in the Eleventh Circuit).

Supreme Court considered whether the defendant's prior second-degree burglary conviction in Missouri was a "violent felony" under a sentence-enhancement provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).[18] When Congress first passed the ACCA in 1984, the statute defined "burglary" as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." *Taylor*, 495 U.S. at 581 (quoting 18 U.S.C. § 1202(c)(9) (repealed 1986)). Congress deleted this definition from the ACCA when it amended the statute, but retained burglary as a predicate offense. Because of this deletion, the Supreme Court was faced with the question of how to define the meaning of "burglary" in the ACCA. *Id*. at 580.

The Supreme Court first rejected the argument that "Congress intended the meaning of 'burglary' for purposes of [the ACCA] to depend on the definition adopted by the State of conviction." *Id*. at 590. The Supreme Court reasoned that such an approach would result in a person convicted of "burglary" in one state qualifying for the ACCA enhancement, but not a person who committed the same law-breaking acts in a different state that did not label those acts as "burglary." *Id*. Viewing this as an "implausible" interpretation of Congress's intent, *id*., the Supreme Court concluded that "burglary" in the ACCA "must have some uniform definition independent of the labels employed by the various States' criminal codes." *Id*. at 592.

In its search for uniformity, the Supreme Court then addressed the approach taken by some courts of appeals that defined "burglary" in the ACCA to mean the common-law definition of burglary. *Id*. In rejecting that position,

---

[18] Although *Taylor* considered whether a conviction qualified as a "violent felony" under the ACCA, we have applied its analysis when interpreting the meaning of offense categories enumerated in the Sentencing Guidelines. *See United States v. Ortega–Gonzaga*, 490 F.3d 393, 394–95 (5th Cir. 2007) (applying *Taylor* to determine whether the defendant's prior state conviction was the enumerated felony of "burglary of a dwelling" in the § 2L1.2 crime-of-violence enhancement).

the Supreme Court stressed that "the contemporary understanding of 'burglary' has diverged a long way from its common-law roots." *Id.* at 593.  The Supreme Court reasoned that although "[b]urglary was defined by the common law to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony," *id.* at 580 n.3 (citation omitted), most states had "expanded this definition to include entry without a 'breaking,' structures other than dwellings, offenses committed in the daytime, entry with intent to commit a crime other than a felony, etc.," *id.* at 593 (citation omitted).

Next, the Supreme Court evaluated whether the meaning of "burglary" in the ACCA applied to only a special subclass of burglaries with elements that included "conduct that presents a serious risk of physical injury to another." *Id.* at 597.  The Supreme Court concluded that this argument was inconsistent with the plain language of the ACCA.  It reasoned that "if this were Congress' intent, there would have been no reason to add the word 'burglary' to [the ACCA], since that provision already includes *any* crime that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Id.*

After ruling that the meaning of "burglary" was not limited to its common-law definition or to a subclass of burglaries, the Supreme Court stated that "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States." *Id.* at 598 (citing *Perrin v. United States*, 444 U.S. 37, 45 (1979); *United States v. Nardello*, 393 U.S. 286, 289 (1969)).  The Supreme Court further stated that "[a]lthough the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* (citing W. LaFave & A. Scott, Substantive Criminal Law § 8.13(a), p. 466 (1986)).  Based on these principles, the Supreme Court held that "an offense constitutes 'burglary' for purposes of [the ACCA] if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury

instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id*. at 602.

We have several times interpreted *Taylor* as requiring that lower courts always look to the majority of state codes—as well as to other sources, including the Model Penal Code, federal law, and criminal law treatises—when determining the "generic, contemporary meaning" of an undefined offense category in the Guidelines. *See, e.g.*, *United States v. Santiesteban–Hernandez*, 469 F.3d 376, 379 (5th Cir. 2006) ("The generic, contemporary meaning of a predicate offense 'roughly correspond[s] to the definitions of [the crime] in a majority of the States criminal codes.'" (alteration in original) (quoting *Taylor*, 495 U.S. at 589)); *Munoz–Ortenza*, 563 F.3d at 114–16 (relying on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the "generic, contemporary meaning" of "minor" was sixteen for the purposes of applying "sexual abuse of a minor" in § 2L1.2 to prior convictions involving oral copulation); *Lopez–DeLeon*, 513 F.3d at 474–75 (relying on definitions in the majority of state codes, the Model Penal Code, and federal law to conclude that the "generic, contemporary meaning" of the age of consent was sixteen for the purposes of "statutory rape" in § 2L1.2); *United States v. Mendez–Casarez*, 624 F.3d 233, 239 (5th Cir. 2010) ("The generic, contemporary meanings of offenses can be found as they are defined 'in the criminal codes of most States,' the Model Penal Code, and treatises such as Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* (1986)." (footnote omitted) (quoting *Taylor*, 495 U.S. at 598)). We conclude that this interpretation reads *Taylor* too strictly and overlooks that the *Taylor* Court referenced statutory definitions for the narrow purpose of distinguishing the contemporary sweep of "burglary" from its antiquated common-law past. Contrary to our prior interpretation, *Taylor* did not impose a methodological requirement on lower courts to look always to the majority of state codes—as well as the Model Penal Code, federal law, and criminal law treatises—when deriving the "generic, contemporary meaning" of

an undefined offense category in a federal sentencing enhancement. *See Ramirez–Garcia*, 646 F.3d at 782–83 (rejecting that *Taylor* requires lower courts to look to definitions in the various state codes, criminal law treatises, and the Model Penal Code to formulate the "generic, contemporary meaning" of "sexual abuse of a minor" in § 2L1.2).[19]

Our construction of *Taylor* is supported by the reasoning in the two cases that the *Taylor* Court cited as authority to support its reliance on the broadened definitions of "burglary" in the majority of state codes—*Perrin v. United States* and *United States v. Nardello*. Both cases involved common-law offense categories that the Court defined using their "contemporary, generic meaning," not their antiquated meaning at common law. In *Perrin*, the petitioner argued that Congress intended to confine the meaning of "bribery" in 18 U.S.C. § 1952 ("the Travel Act") to its common-law definition, which limited the commission

---

[19] We are convinced, as to the non-common-law offense categories of "sexual abuse of a minor" and "statutory rape," that our labors in cataloguing state and federal criminal laws and learned treatises would not further *Taylor*'s goal of uniformity. If, as Rodriguez argues, that search would show that Texas Penal Code § 22.011(a)(2) is categorically overbroad as compared to the generic offenses, because it includes victims over the age of sixteen, then under *Taylor*'s categorical approach no conviction under § 22.011(a)(2) could qualify for a crime-of-violence sentencing enhancement under § 2L1.2(b)(1)(A)(ii), no matter the actual victim's age. *See United States v. Fierro–Reyna*, 466 F.3d 324, 327 (5th Cir. 2006). Corresponding Mississippi law, by contrast, generally caps the age of the victim at sixteen, fitting within Rodriguez's proposed generic definition of "minor." *See* MISS. CODE ANN. § 97-3-65(1) (statutory rape); *id.* § 97-3-95(1) (sexual battery). Accordingly, a defendant convicted in Mississippi of having sexual intercourse with a thirteen-year-old would be subject to a crime of violence enhancement, while a defendant convicted in Texas of the same conduct would not. Another oddity, highlighting the difficulty in collecting and meaningfully analyzing disparate criminal statutes dealing with sexual offenses involving minors, is that the federal crime of "sexual abuse of a minor or ward" excludes from its definition of "minor" persons younger than twelve years old. *See* 18 U.S.C. § 2243(a). A final example is that tabulating jurisdictions may not account for whether the most populous states have chosen to adhere to the "majority" view. *See United States v. Viezcas–Soto*, 562 F.3d 903, 914 (8th Cir. 2009) (Gruender, J., dissenting) ("It seems to me that a definition of 'statutory rape' that excludes the statutory rape laws of seventeen states, including the most populous state in the Union [California], along with Texas (which sets the age of consent at seventeen), New York (seventeen), Florida (eighteen), and Illinois (seventeen), cannot reasonably be classified as 'generic.'"). These persistent complexities strengthen our conclusion that the majority of our sister circuits are correct, and that *Taylor* could not have called for the Sisyphean task of examining each jurisdiction's law where it concerns non-common-law offense categories.

of the offense to public officials.  444 U.S. at 41.  In rejecting this narrow definition, the Supreme Court reasoned:

> In sum, by 1961 the common understanding and meaning of "bribery" had extended beyond its early common-law definitions.  In 42 States and in federal legislation, "bribery" included the bribery of individuals acting in a private capacity.  It was against this background that the Travel Act was passed.

*Id*. at 45 (footnote omitted).  In *Nardello,* the Supreme Court addressed the meaning of "extortion" in the Travel Act.  393 U.S. at 287.  The common-law definition of that offense also was limited to public officials.  *Id*. at 289.  The Supreme Court recognized that "[i]n many States . . . the crime of extortion ha[d] been statutorily expanded to include acts by private individuals under which property is obtained by means of force, fear or threats."  *Id*.  at 290 (citation omitted).  In concluding that "extortion" in the Travel Act was not limited to its common-law definition, the Supreme Court reasoned that "in many States . . . the crime of extortion has been statutorily expanded to include acts by private individuals."  *Id*.

We recognize that the *Taylor* Court rejected the view that Congress intended for undefined offense categories in federal sentencing enhancements to correspond to what states happen to call their crimes.  495 U.S. at 591.  At the same time, our federalist system vests states with the power to define and to enforce their own criminal laws, a principle validated by *Taylor, Perrin,* and *Nardello*, which discerned congressional intent that contemporary state statutes, not their common-law antecedents, should be supported as the guiding focus in defining common law, enumerated offenses.  *See id*. at 593–94; *Perrin*, 444 U.S. at 315; *Nardello*, 395 U.S. at 296; *see generally Engle v. Isaac*, 456 U.S. 107, 128 (1982) (affirming that "[t]he States possess primary authority for defining and enforcing the criminal law").  In joining the First, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, we facilitate uniformity across the circuits by adopting

a single, workable method to derive the "generic, contemporary meaning" of non-common-law offense categories enumerated in federal sentencing enhancements.

Taking a plain-language approach when determining the "generic, contemporary meaning" of non-common-law offense categories furthers this cooperative federalism approach. As a conceptual matter, it is difficult, if not impossible, to identify an accurate set of discrete elements that define offense categories that do not have a generic structure that is rooted in common law. *See, e.g.*, *See United States v. Corona–Sanchez*, 234 F.3d 449, 453 (9th Cir. 2000) (reasoning that "[b]ecause burglary is a discrete offense [at common law], it lends itself to a narrow definition that may be applied uniformly . . . without regard to nuances of state law" (internal quotation marks and citations omitted)). Moreover, wide variations in prohibited conduct under state codes make it difficult, if not impossible, to determine whether a majority consensus exists with respect to the element components of an offense category or the meaning of those elements.

The wide variation of prohibited conduct in the various state codes involving sexual abuse of minors lends support to these arguments. As the Eleventh Circuit has observed, "[w]hile some states choose to punish only physical contact with minors, others punish a substantial range of non-physical acts towards minors, and while some require a perpetrator's physical presence in front of a minor, others punish remote acts and communications." *Ramirez–Garcia*, 646 F.3d at 783 n.8. Given this wide variation, it is doubtful that we can identify a majority consensus, or even single out a discrete set of common elements that define "sexual abuse of a minor" in § 2L1.2. *See id.* (stressing that "formulating a generic definition of 'sexual abuse of a minor' from states' statutes and other sources would prove overwhelming, if not an impossibly inaccurate process"). The same problem arises in the context of "statutory rape" under § 2L1.2. Many jurisdictions do not use the specific label "statutory rape" in their codes, and address the legality of many different types

21

of sexual activities involving minors (*e.g.*, sexual contact, penetration, etc.) under a single statute.[20]   Further, twenty-three jurisdictions characterize "statutory rape" (or its equivalent) as a strict-liability offense, whereas eighteen jurisdictions allow for a *mens rea* defense and limit strict liability to situations in which there is a specific age differential between the victim and the defendant.  *See* Catherine L. Carpenter, *On Statutory Rape, Strict Liability, and the Public Welfare Offense Model*, 53 AM. U. L. REV. 313, 385–91 (2003) (providing a jurisdictional analysis of statutory rape laws).  This variation makes it difficult to derive a uniform "generic, contemporary meaning" of "statutory rape" that is accurate by looking to the various state codes—and other sources, including the Model Penal Code, federal law, and criminal law treatises.  *See id*. at 317 ("Unlike many crimes whose common law blueprint is copied throughout the country with uniformity, statutory rape laws vary greatly among the states").  It also complicates how we should calculate the number of jurisdictions that would comprise a "majority" for the purposes of "statutory rape" under § 2L1.2.   Indeed, that endeavor becomes even more illusory if it is done by disaggregating closely-related elements, like age of consent and age differential, *see also* 18 U.S.C. § 2243(a) (defining the federal offense as applying only when the victim is over the age of twelve but under the age of sixteen and at least four years younger than the defendant), in order to then reassemble these elements into perceived state-groupings we say add up to some sufficient majority to

---

[20] *See, e.g.*, ALASKA STAT. §§ 11.41.434, 11.41.436, 11.41.438, 11.41.440 (using the label "sexual abuse of a minor"); ARIZ. STAT. ANN. § 13-1405 ("sexual conduct with a minor"); CAL. PENAL CODE § 261.5 ("sexual intercourse with person under 18"); CONN. GEN. STAT. §§ 53a70–53a72 ("sexual assault"); FLA. STAT. § 794.05 ("unlawful sexual activity with certain minors"); HAW. REV. STAT. §§ 707–730; 707–733.6 ("sexual assault" and "continuous sexual assault of a minor under the age of fourteen years"); IOWA CODE § 709.4 ("sexual abuse"); LA. REV. STAT. ANN. § 14:80 ("carnal knowledge of a juvenile"); ME. REV. STAT. tit. 17-A, § 253 ("gross sexual assault"); MASS. GEN. LAWS ch. 272, § 4 ("inducing person under eighteen to have sexual intercourse"); MISS. CODE ANN. § 97-3-95 ("sexual battery"); TEX. PENAL CODE § 22.011 ("sexual assault"); VT. STAT. ANN. tit. 13, § 3252 ("sexual assault"); W. VA. CODE § 61-8B-3 ("sexual assault"); WYO. STAT. ANN. § 6-2-303 ("sexual assault").

qualify as "generic."

For these reasons, we conclude that taking a plain-meaning approach to derive the "generic, contemporary meaning" of non-common-law offense categories is grounded in the most reasoned interpretation of *Taylor*, and avoids some of the gymnastics that our prior application of *Taylor*'s categorical approach required.

We now apply our approach to Rodriguez's case. As explained above, we begin our inquiry by identifying the enumerated offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. Rodriguez's case involves "sexual abuse of a minor" and "statutory rape" in the § 2L1.2 crime-of-violence enhancement. We described above that the meaning of these offense categories is unclear from the plain terms of § 2L1.2 and its applicable commentary.

Next, we determine whether "sexual abuse of a minor" and "statutory rape" are offense categories defined at common law, or offense categories not defined at common law. We conclude that both are non-common-law offense categories. This conclusion is consistent with that of other circuits that have considered the issue. *See Ramirez–Garcia*, 646 F.3d at 783 (concluding that "sexual abuse of a minor" in the § 2L1.2 enhancement is a non-traditional offense category that is not defined at common law); *Lopez–Solis*, 447 F.3d at 1206–07 (characterizing "sexual abuse of a minor" in the §2L1.2 enhancement as non-traditional offense); *United States v. Gomez–Mendez*, 486 F.3d 599, 602 n.4 (9th Cir. 2007) (concluding that "statutory rape is distinct from the common law offense"). It is also consistent with leading criminal law treatises to consider the issue. In listing the offenses at common law, Professor LaFave's treatise notes:

> Although there were some early criminal statutes, in the main the criminal law was originally common law. Thus

> by the 1600's the judges, not the legislature, had created and defined the felonies of murder, suicide, manslaughter, burglary, arson, robbery, larceny, rape, sodomy and mayhem; and such misdemeanors as assault, battery, false imprisonment, libel, perjury and intimidation of jurors. During the period from 1660 (the Restoration of the monarchy of Charles II after Cromwell) to 1860 the process continued, with the judges creating new crimes when the need arose and punishing those who committed them: blasphemy (1676), conspiracy (1664), sedition (18th century), forgery (1727), attempt (1784), solicitation (1801).

Wayne R. LaFave, Criminal Law, § 2.1(b) (5th ed. 2010). Neither "sexual abuse of a minor" nor "statutory rape" appears in this list. LaFave discusses all sexual crimes involving minors in a subsection of the treatise dedicated to statutory rape, which lends further support to the conclusion that it is difficult to cleanly identify uniform sets of elements that define "sexual abuse of a minor" and "statutory rape." In that subsection, he explains that criminal prohibitions against sexual relations with a child did not exist at early common law—rather, those offenses were statutory creations:

> Under early English common law, sexual relations with a child, no matter how young, was not regarded as rape if the child consented. However, an Early English statute made it a felony to have carnal knowledge with a child under the age of ten, with or without the child's consent.

§ 17.4(c) (citations omitted). In this passage, LaFave also cites to two early English cases—*Reg. v. Read*, 1 Den. C.C. 377; *Reg. v. Webb*, 2 C & K 937—as authority that sexual relations with a child were not regarded as rape if the child consented under early English common law.[21] Blackstone's Commentaries also

---

[21] We disagree with the conclusion in Judge Graves's concurrence in part and concurrence in the judgment that "statutory rape" is an offense category defined at common law, rendering our plain-meaning approach inapplicable, for additional reasons. First, that concurrence erroneously presumes that the crime of "statutory rape" was uniformly incorporated into American law as a consequence of being codified in English law before 1607. For example, a number of states incorporate the common law of England into their state law,

lend support to our conclusion that "sexual abuse of a minor" and "statutory rape" are non-common-law offense categories. *See* W. Blackstone, IV Commentaries on the Laws of England 212 (1st American ed. 1772) (reprint 1992) ("And by statute 18 Eliz. c. 7. it is made felony . . . the abominable wickedness of carnally knowing or abusing any woman child under the age of ten years; in which case the consent or non-consent is immaterial.").

Having concluded that "sexual abuse of a minor" and "statutory rape" under § 2L1.2. are non-common-law offense categories, we derive their "generic, contemporary meaning" from the common usage of their terms as stated in legal and other well-accepted dictionaries. We first determine the generic meaning of "minor" in "sexual abuse of a minor."[22] Oxford English Dictionary defines

but do not explicitly incorporate English statutes, whether enacted before 1607 or another date. *See, e.g.*, ALA. CODE § 1-3-1; CAL. CIV. CODE § 22.2; HAW. REV. STAT. § 1-1; IDAHO CODE § 73-116; MONT. CODE ANN. § 1-1-109; NEB. REV. STAT. § 49-101; S.C. CODE ANN. § 14-1-50; TEX. CIV. PRAC. & REM. CODE ANN. § 5.001; VA. CODE ANN. § 1-200. Second, we disagree with the concurrence's characterization of our approach as relying solely and improperly on a distinction "between judge-created offenses and statutory offenses." Our decision to characterize "statutory rape" as a non-common-law offense category is not only based on the ground that "statutory rape" is a statutory creation, but also on the point that "statutory rape" lacks a *mens rea* requirement. Supreme Court and our precedent have recognized that *mens rea* is an essential component of common-law offenses. *See Staples v. United States*, 511 U.S. 600, 605 (1994) (explaining that courts construe statutes "in light of the background rules of the common law, . . . in which the requirement of some *mens rea* for a crime is firmly embedded"); *United States v. Garrett*, 984 F.2d 1402, 1410 (5th Cir. 1993) ("The requirement of *mens rea* as a predicate to criminal liability is a fundamental precept of the Anglo-American common law." (internal citation omitted)); *see also* J.W.C. Turner, *The Mental Element in Crimes at Common Law*, 6 Cambridge L.J., 81, 82–83 (1936) (recognizing that the "rules on which liability depends in crimes at common law" "require evidence as to the state of a [defendant's] mind."). For example, these states have held either that statutory rape is not a common-law offense, or distinguished statutory rape from the common-law offense of rape. *See Drake v. State*, 236 S.E.2d 748, 750 (Ga. 1977); *State v. Rufus*, 237 N.W. 67, 73 (Wis. 1931); *State v. Lanto*, 121 A. 139, 140 (N.J. 1923); *State v. Pickett*, 11 Nev. 255, 257–58 (Nev. 1876); *Commonwealth v. Exler*, 89 A. 968, 969–71 (Pa. 1914).

[22] The panel concurrence challenges that our prior decisions defining "minor" in "sexual abuse of a minor" under § 2L1.2 are "unsupported by proper analysis." 698 F.3d at 223, *vacated by* 701 F.3d 1080 (granting rehearing en banc). Specifically, the panel concurrence asserts that we have relied on our prior decision in *United States v. Martinez–Vega,* 471 F.3d 559, 562 (5th Cir. 2006), to reject as foreclosed any argument that Texas Penal Code § 22.011(a)(2) does not categorically constitute "sexual abuse of a minor" under § 2L1.2, even

"minor" as "[u]nder age; below the age of majority." 9 Oxford English Dictionary 824 (2d ed. 1989); *accord* Merriam–Webster's Collegiate Dictionary 1220 (11th ed. 2003) (defining "minor" as "a person who has not attained the age of majority"); Webster's Third New International Dictionary (3d ed. 2002) (defining "minor" as "a person of either sex under full age of majority: one who has not attained the age at which full civil rights are accorded . . . : one who in England and generally in the U.S. is under 21 years of age"). Moreover, Black's Law Dictionary (9th ed. 2009) defines "minor" as "[a] person who has not reached full legal age; a child or juvenile." Contrary to Rodriguez's position, neither source defines "minor" as below the age of sixteen. Rather, using these definitions, a statute that prohibits acts of sexual abuse against minors will comport with the generic meaning of "minor" as long as the statute sets the age of consent below the age of majority—which we conclude to be the age of eighteen under our method.[23] As noted above, Black's Law Dictionary defines "minor" in terms of

---

though the definition of "minor" was never at issue in *Martinez–Vega*. Moreover, it challenges the *Taylor* analysis in our prior decision in *United States v. Zavala–Sustaita*, 214 F.3d 601 (5th Cir. 2000). In that case, we held that a defendant's prior conviction under Texas Penal Code § 22.11(a)(2), which prohibits "indecency with a child," qualified as "sexual abuse of a minor" on the grounds that "'a child younger than 17 years,' is clearly a 'minor.'" *Id*. at 604. Although we do not agree that those decisions are insufficient or unsound, our approach provides further methodological justification and analysis to support the conclusion that the "generic, contemporary meaning" of the term "minor" is a person under the age of majority.

[23] We note that our decision harmonizes with many other Guidelines enhancements involving criminal violence against children that define "minor" as a person under the age of eighteen. For instance, the § 2L1.2 enhancement provides for an enhancement if a defendant previously was deported, or unlawfully remained in the United States, after a "child pornography offense." U.S.S.G. § 2L1.2(b)(1)(A)(iv). Application Note 1 defines "child pornography offense" as "(I) an offense described in 18 U.S.C. § 2251, § 2251A, § 2252, § 2252A, or § 2260; or (II) an offense under state or local law consisting of conduct that would have been an offense under any such section if the offense had occurred within the special maritime and territorial jurisdiction of the United States." U.S.S.G. § 2L1.2 cmt. n.1(B)(ii). Federal law defines "minor" as a person under the age of eighteen for the purpose of offenses defined in § 2251 ("sexual exploitation of children"), § 2251A ("selling or buying of children"), § 2252 ("certain activities relating to material involving the sexual exploitation of minors"), § 2252A ("certain activities relating to material constituting or containing child pornography"), and § 2260 ("production of sexually explicit depictions of a minor for importation into the United States"). *Id*. § 2256(1). *See also, e.g.*, U.S.S.G. §§ 2A3.1, 2A3.3, 2A3.4 (involving

a "person who has not reached full legal age." Black's Law Dictionary (9th ed. 2009) defines "legal age" as either "age of capacity" or "age of majority," and provides that both phrases are usually defined by statute at eighteen years old. It defines "age of capacity" as "[t]he age, usu. defined by statute as 18 years, at which a person is legally capable of agreeing to a contract, maintaining a lawsuit, or the like." Moreover, it defines "age of majority" as "[t]he age, usu. defined by statute as 18 years, at which a person attains full legal rights, esp. civil and political rights such as the right to vote. . . . In almost all states today, the age of majority is 18, but the age at which a person may legally purchase and consume alcohol is 21."[24]

We next determine the generic meaning of "statutory rape."[25]

---

criminal sexual abuse); 2A3.5 (registration as a sex offender); 2G1.3 (promoting a commercial sex act or prohibited sexual conduct); 2G2.1 (sexual exploitation of a minor); 4B1.5 (repeat and dangerous sex offender against minors); 5D1.2 (supervised release). Similarly, 18 U.S.C. § 3553 outlines special considerations in sentencing defendants convicted of "[c]hild crimes and sexual offenses," including under § 1201 (kidnapping) and § 1591 (sex trafficking), both of which contain provisions specially applicable when the victim is under the age of eighteen. *See* 18 U.S.C. §§ 1201(g), 1591(a), 3553(b)(2)(A).

[24] We also observe that this plain-meaning approach is consistent with the approach of the U.S. Sentencing Commission, which broadly defines various sentencing enhancements involving sexual crimes against minors to include persons under the age of eighteen. In 2000, for instance, the Commission amended multiple enhancements in U.S.S.G. §§ 2A3 and 2G1 involving sexual abuse of children pursuant to a congressional directive in the Protection of Children from Sexual Predators Act of 1998, Pub. L. 105–314 ("the Act"). U.S.S.G. App. C., Amend. 592. The Act directed the Commission to review the Sentencing Guidelines to create penalties for various federal sexual offenses involving children, some of which defined "minor" at the age of eighteen. Pub. L. 105–314; *see, e.g.*, 18 U.S.C. § 2422(b) (involving the offense of "coercion and enticement" and defining the victim as "an individual who has not attained the age of 18 years"); § 2423(a) (involving the offense of "transportation with intent to engage in criminal sexual activity" and defining the victim as "an individual who has not attained the age of 18 years"). In response to this congressional directive, the 2000 Guidelines added enhancements involving sexual offenses using the specific term "minor," which the Commission defined as an "individual who had not attained the age of 18 years." *See* U.S.S.G. App. C., Amend. 592.

[25] In *United States v. Alvarado–Hernandez*, 465 F.3d 188, 189–90 (5th Cir. 2006), we applied our "common-sense approach" to conclude that the defendant's conviction qualified as "statutory rape" under § 2L1.2 based on facts in the indictment that the case involved a fourteen-year-old victim. The panel concurrence criticizes *Alvarado–Hernandez* for failing to provide a categorical analysis of why the statute of conviction embodied the "generic,

27

Merriam–Webster's Collegiate Dictionary defines "statutory rape" as "sexual intercourse with a person who is below the statutory age of consent." Merriam–Webster's Collegiate Dictionary 1220 (11th ed. 2003); *accord* Webster's Third New International Dictionary (defining "statutory rape" as "sexual intercourse with a female whether willing or unwilling who is below the age fixed by the applicable statute as the age of consent."). Black's Law Dictionary (9th ed. 2009) defines "statutory rape" as "[u]nlawful sexual intercourse with a person under the age of consent (*as defined by statute*), regardless of whether it is against that person's will." (Emphasis added). These definitions do not set a uniform definition of the age of consent at sixteen. Moreover, the Black's Law Dictionary definition states explicitly that the age of consent for the purposes of statutory rape is to be defined by statute.[26] For these reasons, we conclude that the "generic, contemporary meaning" of "statutory rape" sets the age of consent as a person under the age of majority as defined by statute.[27]

---

contemporary meaning" of "statutory rape." *See Rodriguez*, 698 F.3d at 223–24, *vacated by* 701 F.3d 1080 (granting rehearing en banc). As explained previously, we are skeptical that *Taylor* and its progeny lead to reasonable results if lower courts must disregard facts that show that the defendant's conduct, in essence, constituted a crime of violence. Rooting the crime-of-violence determination strictly in the elements of the statute alone has required us to perform gymnastics when evaluating when a defendant's prior conviction constitutes a crime of violence under the Guidelines. Although we do not agree that our holding in *Alvarado–Hernandez* is insufficient or unsound, our approach provides further methodological justification and analysis to support the conclusion that the "generic, contemporary meaning" of the age of consent for the purposes of "statutory rape" in the § 2L1.2 enhancement is defined as a person under the age of majority as defined by statute.

[26] We acknowledge that one possible weakness of relying on the plain language of the Black's Law Dictionary definition of "statutory rape" is that it could conceivably result in the application of the § 2L1.2 enhancement to a prior conviction based on an outlier statute that sets the age of consent above the age of majority. At the present, this is only a hypothetical given that no jurisdiction currently sets the age of consent above the age of eighteen for the purposes of statutory rape (or its equivalent). *See Lopez–DeLeon*, 513 F.3d at 475 n.3 (providing a nationwide survey of each jurisdiction's statutory rape laws (or its equivalent) showing that thirty-four jurisdictions set the age of consent at sixteen, six jurisdictions set the age of consent at seventeen, and eleven jurisdictions set the age of consent at eighteen).

[27] Although we agree with the Ninth Circuit's general method in looking to definitions in legal and other well-accepted dictionaries to define the "generic, contemporary meaning"

Finally, we determine whether the elements of Rodriguez's statute of conviction comport with the generic meaning of "sexual abuse of a minor" and "statutory rape." Rodriguez was convicted of sexual assault of a child under Texas Penal Code § 22.011(a)(2) after engaging in sexual conduct with a sixteen-year-old victim when he was nineteen years of age. Section 22.011(a)(2) punishes any defendant who:

> (2) intentionally or knowingly:
>    (A) causes the penetration of the anus or sexual organ of a child by any means;
>    (B) causes the penetration of the mouth of a child by the sexual organ of the actor;
>    (C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
>    (D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or
>    (E) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.

---

of "statutory rape," we disagree with its particular application of those definitions. In *United States v. Rodriguez–Guzman*, the Ninth Circuit relied on Black's Law Dictionary's definition of "age of consent" to conclude that the "generic, contemporary meaning" of "minor" in the context of statutory rape is a person under the age of sixteen. 506 F.3d 738, 746–47 (9th Cir. 2007). Black's Law Dictionary (9th ed. 2009) defines "age of consent" as "[t]he age, usu. defined by statute at 16 years, at which a person is legally capable of agreeing to marriage (without parental consent) or to sexual intercourse." We reject the Ninth Circuit's reliance on this definition of "age of consent" because the Black's Law Dictionary definition of "statutory rape" states explicitly that the age of consent in the specific context of statutory rape is to be defined *by statute*. Black's Law Dictionary's definition of "age of consent" encompasses contexts that are inapposite to sexual intercourse, such as marriage. We conclude that it is improper to rely on this broader definition when the plain language of the definition of "statutory rape" provides for a narrower meaning of "age of consent." We also note that the Model Penal Code explicitly highlights variability in the age of consent and the need to look to the statute at issue to determine its value. *See* MODEL PENAL CODE § 213.3(1). It provides, generally, for victims less than sixteen years old, but allows for victims of less than twenty-one years old in the case in which the defendant is "his guardian or otherwise responsible for general supervision of his welfare," and places no age maximum in other circumstances. *Id*. We note finally that it also disclaims any notion of a pre-existing "generic" single statutory rape scheme. *See* § 213.1 explanatory note.

29

TEX. PENAL CODE § 22.011(a)(2).  The Texas statute defines "child" as "a person younger than 17 years of age." *Id.* at § 22.011(c)(1).

Rodriguez does not challenge that these elements comport with the "generic, contemporary meaning" of "sexual" or "abuse."  Rather, he argues that the Texas statute is broader than the generic meaning of "sexual abuse of a minor" and "statutory rape" because it defines "child" at the age of seventeen, not sixteen.  We disagree.  For the reasons explained above, the "generic, contemporary meaning" of "minor" in the "sexual abuse of a minor" category under § 2L1.2 is a person under the age of majority.[28]  Moreover, the age of consent for the purposes of "statutory rape" in § 2L1.2 is the age of consent as defined by statute.  In defining "child" at seventeen, the Texas statute comports with both of these generic meanings.

Therefore, we conclude that it was not error for the district court to impose a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) for a crime of violence based on Rodriguez's prior conviction for sexual assault of a child under Texas Penal Code § 22.011(a)(2).

### III. Conclusion

For the foregoing reasons, Rodriguez's sentence is AFFIRMED.

---

[28] As explained previously, Rodriguez also claims that the offense defined in Texas Penal Code § 22.011(a)(2) is broader than the "generic, contemporary meaning" of "sexual abuse of a minor" because the statute requires a three-year, as opposed to a four-year, age differential between the victim and the defendant.  We reject this argument because the definitions of "sexual abuse of a minor" in legal and other well-accepted dictionaries do not include such an age-differential requirement.

11-20881

OWEN, Circuit Judge, joined by JONES, Circuit Judge, concurring:

I concur in the judgment.  My concern with the court's opinion is its exclusive reliance on dictionaries in determining the meaning of "sexual abuse of a minor" and "statutory rape."  While dictionaries certainly may be consulted, it is difficult to see why they should be controlling.  I respectfully submit that we should attempt to divine what the Sentencing Commission meant when it used the terms at issue in § 2L1.2 by considering the evolution of this section of the Guidelines.

# I

The United States Sentencing Commission, courts, attorneys, and probation officers have struggled with the meaning of "a crime of violence" as used in the Sentencing Guidelines, particularly with which crimes of a sexual nature constitute "a crime of violence."[1]  Currently, under § 2L1.2(b)(1)(A), the base offense level is to be increased by 16 levels if a prior conviction for "a crime of violence" receives criminal history points or by 12 levels if that prior conviction does not receive criminal history points.[2]  By contrast, a prior conviction for "an aggravated felony" results in an 8 level increase, and a prior conviction "for any other felony" results in a 4 level increase.[3]  Accordingly, whether a prior conviction is for "a crime of violence" can significantly affect the calculation of the advisory sentencing range.

---

[1] *See* U.S. SENTENCING GUIDELINES MANUAL app. C at 393 (2003) (stating that changes to the definition of "crime of violence" were necessary because "[t]he previous definition often led to confusion over whether the specified offenses listed in that definition, particularly sexual abuse of a minor and residential burglary, also had to include as an element of the offense 'the use, attempted use, or threatened use of physical force against the person of another'"); U.S. SENTENCING GUIDELINES MANUAL app. C supp. at 296 (2008) (explaining that additional amendments to the definition of "crime of violence" were made with "input the Commission has received from federal judges, prosecutors, defense attorneys, and probation officers at several roundtable discussions and public hearings on the operation of § 2L1.2").

[2] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A) (2012).

[3] *Id*. § 2L1.2(b)(1)(C), (D).

31

In this case, we must decide whether Rodriguez's prior conviction under Texas law for sexual contact with a sixteen-year-old female when Rodriguez was more than three years older than the victim constituted either "sexual abuse of a minor" or "statutory rape" with the meaning of § 2L1.2 of the Guidelines. I respectfully submit that amendments to the Sentencing Guidelines over the years indicate that the Commission has not intended for courts to apply the "categorical approach" as an exacting template for discerning what constitutes "forcible sex offenses," "statutory rape," or "sexual abuse of a minor," each of which is an enumerated offense in the definition of "crime of violence" in § 2L1.2.[4]

The Sentencing Guidelines have long included "forcible sex offenses" among the enumerated offenses that constitute a "crime of violence."[5] The term "forcible sex offenses" describes a broad range of offenses, unlike more specific enumerated crimes, such as murder or manslaughter. "[F]orcible sex offenses" includes a variety of conduct criminalized under state and federal law that is not as conducive to categorical analysis as more narrowly defined offenses, such as rape. It also seems that "forcible sexual offenses" would connote only those sex crimes that involve force if the words "forcible sex offenses" were given their plain meaning. But the assumption that "forcible sex offenses" must include the use of force was undermined when, in 2001, the Commission amended § 2L1.2 to include "sexual abuse of a minor" as a parenthetical explanation of "forcible sex offenses."[6]     Then, in 2003, the Commission amended the Guidelines to include "statutory rape" as an enumerated offense under the definition of "crime

---

[4] *Id.* § 2L1.2 cmt n. 1(B)(iii).

[5] U.S. SENTENCING GUIDELINES § 2L1.2 cmt. n. 1(B)(ii) (2001).   Prior to the 2001 amendments, the term "crime of violence" was defined by reference to § 4B1.2, which included "forcible sex offenses."   U.S. SENTENCING GUIDELINES MANUAL §§ 2L1.2 cmt. n. 1, 4B1.2 cmt. n. 1 (2000).

[6] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n. 1(B)(ii) (2001).

of violence."[7]  In that same amendment, "sexual abuse of a minor" was removed from a parenthetical example of a forcible sex offense and became part of the listed offenses among those in the definition of "crime of violence."[8]  The commentary to the 2003 amendments explained that,

> [t]he previous definition often led to confusion over whether the specified offenses listed in that definition, particularly sexual abuse of a minor and residential burglary, also had to include as an element of the offense "the use, attempted use, or threatened use of physical force against the person of another."  The amended definition makes clear that the enumerated offenses are always classified as "crimes of violence," regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another.[9]

These amendments did not directly tell courts whether they should apply the "categorical approach," described and applied by the Supreme Court in construing a provision of the Armed Career Criminal Act[10] in the seminal decision, *Taylor v. United States*.[11]  But the difficulties encountered by the Commission in conveying the intended meaning of "forcible sex offenses" and "sexual abuse of a minor" do indicate that the Commission has had in mind a range of diverse conduct, defying precise definition, when it has attempted to set forth the sex crimes that constitute a "crime of violence."  Generic descriptions such as "sexual abuse of a minor" do not readily lend themselves to the distillation of essential elements that is the goal of a "categorical" approach.

The Commission's explanation for further amendments to the definition of "crime of violence" in §2L1.2 seems, at least to me, to reveal more directly the Commission's view of how the enumerated sex offenses are to be identified under

---

[7] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n. 1(B)(iii) (2003).

[8] *Id.*

[9] *Id.* app. C at 393.

[10] 18 U.S.C. § 924(e).

[11] 495 U.S. 597 (1990).

the Guidelines. Those amendments eschew an approach that would seek a "majority" view of how a broad category of offenses, such as "sexual abuse of a minor," is defined or its indispensable elements. In the latest of the amendments to the definition of "[c]rime of violence" in § 2L1.2, the Commission added a parenthetical after "forcible sex offenses," which says "(including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced)."[12] The addition of this parenthetical was in direct response to opinions from this court. The commentary to the 2008 amendments of § 2L1.2 expressly declared that the results in three cases from this circuit were contrary to what the Commission intended.[13] Rather than paraphrase the Commission, the pertinent explanation for the most recent amendments to § 2L2.1 is set forth in the margin.[14] The

---

[12] The definition of "crime of violence" is now as follows:

(iii) "Crime of violence" means any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n. 1(B)(iii) (2012).

[13] U.S. SENTENCING GUIDELINES MANUAL app. C supp. at 296 (2008).

[14] The pertinent reasoning is as follows:

**Reason for Amendment**: This amendment addresses certain discrete issues that have arisen in the application of § 2L1.2 (Unlawfully Entering or Remaining in the United States). The amendment reflects input the Commission has received from federal judges, prosecutors, defense attorneys, and probation officers at several roundtable discussions and public hearings on the operation of § 2L1.2.

First, the amendment clarifies the scope of the term "forcible sex offense" as that term is used in the definition of "crime of violence" in § 2L1.2, Application Note 1(B)(iii). The amendment provides that the term "forcible sex offense"

34

discussion of our court's decision in *United States v. Luciano-Rodriguez*[15] is particularly instructive. Bear in mind that a "crime of violence" as used in § 2L1.2 now expressly includes "forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced)."[16] Under *Taylor*'s categorical approach, we would presumably find the meaning of this "enumerated offense" by searching federal and state statutes, treatises, and dictionaries to determine the "majority" view of the essential elements. Crimes prohibiting conduct that a majority of jurisdictions do not criminalize would not be included within

---

includes crimes "where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced." The amendment makes clear that forcible sex offenses, like all offenses enumerated in Application Note 1(B)(iii), "are always classified as 'crimes of violence,' regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another," USSC, *Guideline Manual*, Supplement to Appendix C, Amendment 658. Application of the amendment, therefore, would result in an outcome that is contrary to cases excluding crimes in which "there may be assent in fact but no legally valid consent" from the scope of "forcible sex offenses." *See*, *e.g.*, *United States v. Gomez-Gomez*, 493 F.3d 562, 567 (5th Cir. 2007) (holding that a rape conviction was not a forcible sex offense because it could have been based on assent given in response to a threat "to reveal embarrassing secrets" or after "an employer threatened to fire a subordinate"); *United States v. Luciano-Rodriguez*, 442 F.3d 320, 322–23 (5th Cir. 2006) (holding that a conviction for a sexual assault was not a f orcible sex offense because it could have been based on assent when "the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it," when "the actor is a public servant who coerces the other person to submit or participate," or when "the actor is a member of the clergy or is a mental health service provider who exploits the emotional dependency engendered by their position"); *United States v. Sarmiento-Funes*, 374 F.3d 336, 341 (5th Cir. 2004) (holding that a conviction for sexual assault was not a forcible sex offense because it could have been based on assent that is "the product of deception or a judgment impaired by intoxication").

*Id.*

[15] 442 F.3d 320, 322-23 (5th Cir. 2006).

[16] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n. 1(B)(iii) (2012).

"forcible sex offenses" or the parenthetical description of such crimes. However, a majority of jurisdictions does not criminalize sexual assault that results "when 'the actor is a member of the clergy or is a mental health service provider who exploits the emotional dependency engendered by their position.'"[17] Yet, the Commission has unequivocally explained in its commentary that it intends for such sexual assault convictions under Texas law to be included within the meaning of "forcible sex offenses" and the accompanying parenthetical explanation and therefore that such an assault constitutes a "crime of violence."[18] Applying the categorical approach would not yield the result that the Commission has expressly said it intends.

What, then, should this tell us about how the Commission intended courts to construe "sexual abuse of a minor" and "statutory rape"? I agree with the court's opinion today that we should apply a common-sense approach when interpreting these terms. Sexual abuse of a minor and statutory rape are defined differently in different states. But the terms used by the Commission encompass a broad range of conduct and were not intended to exclude what is commonly understand to constitute sexual abuse of a minor or statutory rape. The Texas statute under which Rodriguez was convicted[19] defines conduct that all would agree would be sexual abuse if a minor is the victim. Similarly, statutory rape is a commonly understood concept. The only issue is whether a sixteen-year old female who had sexual contact with a male more than three years older than she is a "minor" or can be a statutory rape victim for purposes of the Guidelines.

I agree with the court's opinion today that the Commission did not intend for courts to survey the various state laws to find and adopt the majority view

---

[17] *Luciano-Rodriguez*, 442 F.3d at 322.

[18] U.S. SENTENCING GUIDELINES MANUAL app. C supp. at 296 (2008).

[19] TEX. PENAL CODE § 22.011(a)(2).

of "minor" or the majority view of when an age difference may constitute an affirmative defense to a charge of statutory rape or sexual abuse of a minor. Statutes that prohibit a nineteen-year-old from having sexual contact (of the sort specifically described the Texas statute)[20] with a sixteen-year-old may not represent a "majority" view with respect to the specified ages, but the conduct proscribed, even in light of the ages set forth, is well within commonly understood parameters of what statutes of this sort criminalize. The conduct proscribed by the Texas statute is commonly understood to be unlawful, even if a large number of states specify that the age of the victim must be fifteen or younger rather than sixteen or younger or that the age differential must be greater than four years. The precise contours of state laws are just that, a matter of state law. If the offense is one that is commonly understood to be sexual abuse of a minor or statutory rape in the generic sense, then it comes within the Commission's definition of "crime of violence." To be clear, I agree that Rodriguez's conviction under the Texas statute for either sexual abuse of a minor or statutory rape is a crime of violence as that term is defined in § 2L1.2.

I agree with Judge Gruender's dissenting opinion in *United States v. Viezcas-Soto*,[21] which said "It seems to me that a definition of 'statutory rape'

---

[20] The statute provides that:

A person commits an offense if the person . . . intentionally or knowingly

(A) causes the penetration of the anus or sexual organ of a child by any means;
(B) causes the penetration of the mouth of a child by the sexual organ of the actor;
(C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
(D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or
(E) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.

*Id.*

[21] 562 F.3d 903 (8th Cir. 2009).

that excludes the statutory rape laws of seventeen states, including the most populous state in the Union, along with [Texas, New York, Florida, and Illinois], cannot reasonably be classified as 'generic.'"[22]   The Commission presumably knew when it included the terms "sexual abuse of a minor" and "statutory rape" in § 2L1.2 that states do not uniformly define offenses that would fall within these broad descriptions of offenses and that the age of a "minor" differs among states.  The Commission did not define "minor" in § 2L1.2, although it did so in other Guidelines sections.  In § 2A3.1, "minor" is defined as "an individual who had not attained the age of 18 years."[23]   In § 2A3.2, "minor" is defined as "an individual who had not attained the age of 16 years."[24]   The choice of the age of a "minor" is tailored to the offenses covered in these two Guidelines sections. But § 2L1.2 does not specify the age of a "minor."   If the Commission had intended § 2L1.2 to exclude prior convictions in which the victim was sixteen years of age or older, it could easily have said so.  It did not.  We should accept the commonly understood usage of the terms "sexual abuse of a minor" and "statutory rape" when the prior conviction was obtained under a state law whose definition of a "minor" is widely accepted, even though a particular state did not choose the same age of "minority" that a "majority" of states has chosen.

## II

I am perplexed, for two reasons, by the court's decision to rely solely on dictionary definitions of the term "minor."  The first is that courts are just as capable as the authors of dictionaries of determining how statutes "usually" define "minor."  The second is that there are inconsistencies in how the court applies the dictionary definitions.

With great respect to the authors of legal dictionaries such as Black's, why

---

[22] *Viezcas-Soto*, 562 F.3d at 914 (Gruender, J., dissenting).

[23] U.S. SENTENCING GUIDELINES MANUAL § 2A3.1 cmt. n. 1 (2012).

[24] *Id.* § 2A3.2 cmt. n. 1.

should the court accept at face value the assertions in dictionaries that a "minor," for some purposes, is "usually" a person under the age of eighteen? Presumably the authors arrive at a definition by surveying the way in which terms are actually used in their relevant legal contexts, a task that this court is able to undertake itself. Furthermore, dictionary entries are, by their very nature, broad and tend to encompass all uses of a word or phrase. Dictionary definitions may be a useful starting point for determining what the Commission meant in using specific terms to describe an enumerated offense, but given the potentially significant consequences for a criminal defendant, we should not delegate the interpretation of terms used in a sentencing enhancement entirely to lexicographers.

Second, the court does not appear to adhere to its own commitment to the supremacy of dictionary definitions. The court adopts an age of consent of eighteen by reference to Black's definition of "statutory rape" while rejecting that same dictionary's statement that the "age of consent" to sexual intercourse is "usually" defined by statute at sixteen years.[25]

\* \* \*

I concur in the judgment.

---

[25] *Ante* at 24-25 & n.23.

HAYNES, Circuit Judge, concurring in the judgment only:

I concur in the court's judgment only. The majority opinion provides a fair view of the meaning of the word "minor." Because Rodriguez does not challenge the "generic, contemporary meaning" of the phrase "sexual abuse," the majority opinion properly does not opine on the complex questions related to that matter. *See* Maj. Op. at 10 n.9; Graves Conc. Op. at 9.

I write separately because this case highlights the need for the Sentencing Commission to define "sexual abuse of a minor"—a crime with few common-law analogs. Against the backdrop of a patchwork of state laws on the subject, this guideline is singularly unhelpful. Other guidelines, such as the immediately preceding one, expressly define "minor." *See* U.S.S.G. § 2L1.1 cmt. n.1. Notably, those definitions vary from guideline to guideline. *Compare id.* (defining "minor" as someone under 16), *with* Maj. Op. at 12 n.11 (citing guidelines that define "minor" as someone under 18). The guideline controlling here, however, is silent on that important subject—as well as on the meaning of "abuse"—despite categorizing as "crimes of violence" state-law offenses that depend explicitly on age and that encompass greatly varied conduct. *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii) & cmt n.1(B)(iii). We thus are left to puzzle over nebulous terms that can mean different things in different contexts, a result that frustrates our ability to provide even-handed treatment to similarly-situated, but geographically-diverse, defendants. *See, e.g., Taylor v. United States*, 495 U.S. 575, 590-92 (1990) (discussing need for federal sentencing uniformity).

The Texas indecency-with-a-child statute exemplifies the problems with having such federal definitional voids. *See* Texas Penal Code § 21.11(a); *United States v. Najera-Najera*, 519 F.3d 509 (5th Cir. 2008); *United States v. Zavala-Sustaita*, 214 F.3d 601 (5th Cir. 2000). That statute proscribes everything from

40

otherwise consensual "petting" between teenagers to heinous acts of sexual exploitation.[1]  Which of these should constitute "sexual abuse of a minor," and thus a "crime of violence," under § 2L1.2?

The guideline gives no "guidance," and the majority opinion leaves the issue for another day.  A common-sense, "plain-meaning" understanding of "abuse" would make one think only the latter.  Our precedents, however, have treated both equally.  *See Najera-Najera*, 519 F.3d at 511-12 (holding that section 21.11(a)(1) prohibits conduct constituting "sexual abuse of a minor"); *Zavala-Sustaita*, 214 F.3d at 604-08 (same, for section 21.11(a)(2)).

As the Texas statute demonstrates, myriad offenses could fall under the broad rubric of "sexual abuse of a minor."  The states, of course, are free to criminalize a broad range of "sexual" conduct so long as they stay within federal constitutional bounds.  But in deciding the propriety of a federal sentencing enhancement—a uniquely federal question—we must seek clarity and uniform treatment of similarly-situated defendants.[2]  The problem presented here is that, because of the vast array of conduct that could be "sexual abuse of a minor," "one size does not fit all."  Although a sixteen-level enhancement is too low for some of the more vile cases we see in this area, it is too high for others.

I recognize that district judges, like the highly-skilled judge here, can vary or depart from the Guidelines to capture case-specific nuances.  The problem,

---

[1] The statute prohibits, among other things, engaging in "sexual contact" with a "child," defined as a person under the age of seventeen, although it provides an affirmative defense to those who are "not more than three years older than the victim and of the opposite sex." Texas Penal Code § 21.11(a), (b)(1). "Sexual contact" extends to "any touching . . . , *including touching through clothing*, of the anus, breast, or any part of the genitals of a child," when done with the "intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1)(emphasis added).

[2] We must also remember that federal sentencing is not an opportunity to resentence the defendant for a state crime.  The state has already meted out a punishment it thought appropriate.  Here, the Texas court sentenced Rodriguez to two years of imprisonment.  The offense of conviction in federal court was illegal reentry, not a sexual crime.

however, remains that such conscientious jurists still must consider the Guidelines and their blunderbuss approach to this issue. *See* 18 U.S.C. 3553(a)(4). The district judge here clearly was troubled by that very point. This particular portion of this guideline needs defining or refining. I urge the Sentencing Commission to address this matter definitively.

JAMES E. GRAVES, JR., Circuit Judge, concurring in part and concurring in the judgment:

I concur in the approach adopted by the majority to determine the generic definition of an enumerated Guidelines offense when that offense is not defined at common law. I also concur in the majority's conclusion that the term "minor," as used in "sexual abuse of a minor," means a person under the age of 18. However, because I am convinced that "statutory rape" is an offense defined at common law, I would find the majority's "common usage" approach inapplicable in determining its generic definition. Rather, I would hold that, consistent with our precedent, traditional common law offenses must be defined according to the method used in *Taylor v. United States*, 495 U.S. 575 (1990), by considering the majority of state criminal codes, the Model Penal Code, treatises, and other sources to derive a majority approach. Using this approach, I would conclude that the generic definition of "statutory rape" includes an age of consent of 16 years. Finally, even under the "common usage" approach, I would conclude that the generic definition of "statutory rape" includes an age of consent of 16 years. The majority's definition of "statutory rape" is fundamentally flawed because it depends on state law and is therefore not uniform.

Because Rodriguez's challenge to the definition of the term "minor" fails, he has not shown that the district court erred in determining that his prior conviction under Texas Penal Code § 22.011(a)(2) constitutes "sexual abuse of a minor" and applying a 16-level "crime of violence" enhancement under § 2L1.2. Accordingly, I concur in the judgment of the court.

## I.     "Statutory rape" as a common law offense

The majority's adoption of a "common usage" approach for defining enumerated offenses that are undefined at common law is a sensible solution to an intractable problem that has divided and confused federal courts. Unfortunately, the majority negates many of the benefits of such an approach

by adopting a needlessly complex method for determining whether an offense is "defined at common law." Although the crime of statutory rape has existed for over seven hundred years in England, the majority holds that it is not a common law crime because it was created by statute rather than by judges, and because it has no *mens rea* requirement. These distinctions, in addition to being problematic for other reasons, do not further the central goal of distinguishing offenses that have no well-known, traditional definition and therefore cannot be defined according to the method used in *Taylor*. I would hold that any offense recognized under English law prior to 1607 – when the first English colonies were established in America – is a "common law" offense.

First, it is not even clear that statutory rape was initially created by statute. The earliest reference to statutory rape I have found is in the 1275 Statute of Westminster (3 Edw. 1, c. 13), which provides: "And the King prohibiteth that none do ravish, nor take away by Force, any Maiden within Age (neither by her own Consent, nor without) nor any Wife or Maiden of full Age, nor any Woman against her Will."[1] Some early statutes, such as the 1275 Statute of Westminster, were seen as largely codifying preexisting common law rather than creating new law. Indeed, forcible rape, which the majority correctly recognizes as a common law crime, is listed in the same sentence as statutory rape in the above statute. This does not mean that it was created by statute; rather, the more plausible inference is that both forcible rape and statutory rape were both prohibited by the common law even before the 1275 Statute of Westminster.

Second, a distinction between judge-created crimes and crimes created by early statute is unworkable. As the discussions in Blackstone's Commentaries

---

[1] According to Sir Edward Coke, the words "within age" meant below the age of consent to marriage, which was 12 years. *See* Mortimer Levine, *A More than Ordinary Case of "Rape," 13 and 14 Elizabeth I,* 7 Am. J. Legal Hist. 159, 162-63 (1963).

demonstrate, many traditional offenses have been shaped over time by the interplay of court decisions and statutes. For example, among the various types of homicides "committed for the advancement of public justice," Blackstone lists those set forth in statutes as well as in court opinions. *See* Blackstone, Commentaries *179-80. Similarly, in the discussion of burglary, Blackstone notes that "[t]he entry may be before the breaking, as well as after: for by statute 12 Ann. c. 7. if a person enters into or is within, the dwelling house of another, without breaking in, either by day or by night, with intent to commit felony, and shall in the night break of the same, this is declared to be burglary." *Id.* at *227. Blackstone further describes the ways in which the crime of rape had been modified by statutes, and describes statutory rape as a type of rape. *Id.* at *211-12.

There is simply no justifiable reason for wading through early English law and attempting to disentangle the judge-created aspects of traditional crimes from the statute-created aspects. In explaining the rationale for adopting the "common usage" approach for non-traditional offenses, the majority explains that "it is difficult, if not impossible, to identify an accurate set of discrete elements that define modern, non-traditional offense categories when those categories do not have a generic structure that is rooted in common law." First, a crime that is over four hundred years old is hardly "modern" or "non-traditional." More importantly, it is not generally more difficult to identify a discrete set of elements for traditional offenses with a statutory origin; if anything, it is probably easier.

The majority relies heavily on a discussion in Professor LaFave's treatise but misunderstands its import. Under the heading: "What the Common Law of Crimes Encompasses in States Retaining Common Law Crimes," Professor LaFave answers the question: "How does a court determine something [a] defendant has done amounts to a common law crime?" *See* Wayne R. LaFave,

45

Criminal Law,  2.1(e) (2012).  Professor LaFave notes that a "generally used technique . . . is to look at books by recognized writers on English crimes, especially Blackstone, to determine the existence and definition of a common law crime." *Id.*  The majority misinterprets this as a direction to look at whether sources such as Blackstone describe a crime as created through common law, as opposed to statute.  However, as the cases cited to illustrate this point demonstrate, courts have not looked to sources such as Blackstone to distinguish common law crimes from non-common law crimes – they have looked to such sources to determine whether some particular conduct is described as criminal. *See id.* n.67.  No case cited by Professor LaFave or by the majority has parsed sources such as Blackstone to determine whether a crime is described as statutorily created.  To clarify any potential confusion, Professor LaFave's treatise states in the same section that "[a]n English criminal statute enacted before 1607, if applicable to our conditions, becomes part of our American law." Wayne R. LaFave, Criminal Law,  2.1(e) (2012).

The majority also holds that statutory rape is not a common law offense because it lacks a *mens rea* requirement.[2]  However, it is not clear what the majority means by the term "statutory rape," and how it has determined that this offense lacks a *mens rea* requirement.  Certainly the common dictionary definition of "statutory rape" does not say anything about the presence or absence of a *mens rea* requirement.  If the majority is referring to the traditional, common law understanding of statutory rape, this only underscores the point that such a traditional definition exists and can be used as the baseline for a

---

[2] The Ninth Circuit, which held that statutory rape is not a "traditional" common law offense because it lacks a *mens rea* requirement, at least acknowledged that statutory rape is a common law offense. *United States v. Gomez-Mendez*, 486 F.3d 599, 602 n.4 (9th Cir. 2007); *United States v. Brooks*, 841 F.2d 268, 269 (9th Cir. 1988) (per curiam) ("Despite its statutory heritage, the offense [of statutory rape] is generally considered an extension of the common law crime of forcible rape *and is itself old enough to be a part of the common law of this country*.") (emphasis added).

*Taylor* analysis. If the majority is referring to the dominant contemporary state law definition, or perhaps something else, this only raises further questions and creates additional complexity. The majority seemingly holds that we must first define the elements of an offense (at least partially) in order to determine the standard that will be used to define the offense, and provides no guidance on how such a pre-definition should be determined. This is counterintuitive and convoluted, and does not provide a workable standard that can be applied by courts within our circuit.

Because I conclude that "statutory rape" is an offense defined at common law and therefore "traditional," I would find the majority's "common usage" approach inapplicable.

## II. Defining "statutory rape" using the *Taylor* majority-based approach

As the majority notes, most states do not use the label "statutory rape" in their criminal codes. This presents no problem, as we are concerned with the "basic elements" of an offense rather than the "exact definition or label" given by a state. *Taylor*, 495 U.S. at 599. More difficulty is presented by the variation among state laws on factors such as the age of consent, the *mens rea* requirement, the requisite age difference between the perpetrator and the victim, the sexes of the perpetrator and the victim, and the range of sexual conduct prohibited. Nevertheless, these difficulties are by no means insurmountable. Following the guidance of *Taylor*, courts should use the traditional common law definition of an offense as a baseline and diverge from this definition only when a clear majority of states have done so.

In this case, we need only determine the age of consent in the generic definition of "statutory rape." As this court found in *United States v. Lopez-DeLeon*, 513 F.3d 472, 474 (5th Cir. 2008), thirty-four states (including the

District of Columbia) – two thirds – set the age of consent at sixteen. Both the Model Penal Code and the federal equivalent of statutory rape, 18 U.S.C. § 2243(a), likewise set the age of consent at sixteen. *Id.* at 474-75. Black's Law Dictionary states that the age of consent is "usually defined by statute as 16 years." *Id.* at 475; Black's Law Dictionary 70 (9th ed. 2009). Based on this data, I agree with *Lopez-DeLeon*'s conclusion that the age of consent in the generic definition of "statutory rape" is 16 years.

### III. Defining "statutory rape" using the "common usage" approach

Even assuming "statutory rape" is considered to be a "non-traditional" offense, the majority's application of the "common usage" approach is deficient in several ways. Black's Law Dictionary defines "statutory rape" as "[u]nlawful sexual intercourse with a person under the age of consent (as defined by statute), regardless of whether it is against that person's will." Black's Law Dictionary 1374 (9th ed. 2009). "Age of consent" is defined as "[t]he age, usu[ally] defined by statute as 16 years, at which a person is legally capable of agreeing to marriage (without parental consent) or to sexual intercourse." *Id.* at 70. The majority ignores the clear statement that "age of consent" is usually defined as 16 years, instead focusing on the statement that the age of consent for purposes of statutory rape is "defined by statute." Based on this language, the majority effectively holds that there is no uniform, generic definition of "statutory rape" – that "statutory rape" means unlawful sexual intercourse with a person below whatever age of consent a state chooses to define.

First, this analysis is incongruous with the majority's own analysis of the term "minor." As the majority recognizes, Black's Law Dictionary defines a "minor" as "[a] person who has not reached full legal age." Black's Law Dictionary 1086 (9th ed. 2009). "Legal age" refers to either "age of capacity" or "age of majority." *Id.* at 70. "Age of capacity" is defined as "[t]he age, *usu[ally] defined by statute* as 18 years, at which a person is legally capable of agreeing

to a contract, maintaining a lawsuit, or the like." *Id.* (emphasis added). "Age of majority" is defined as "[t]he age, *usu[ally] defined by statute* as 18 years, at which a person attains full legal rights, esp. civil and political rights such as the right to vote." *Id.* (emphasis added). The dictionary further states that "[i]n *almost all states* today, the age of majority is 18." *Id.* (emphasis added).

Under the majority's analysis, if "minor" were defined as "a person who has not reached full legal age (as defined by statute)," its conclusion would be different – that "minor" means a person below whatever age a state defines as "full legal age." It is unreasonable to allow that so much depends on this parenthetical. As noted above, "full legal age" generally means either "age of capacity" or "age of majority." Moreover, the definitions provided above further state that both "age of capacity" and "age of majority" are *usually defined by statute*, and that the age of majority is not 18 in every state. The only real difference is that "legal age" is "*usually* defined by statute," whereas "age of consent" is "defined by statute." Surely the word "usually" should not lead to such a stark difference in interpretation.

Second, and more fundamentally, the majority's definition of "statutory rape" is anything but "uniform." Instead, the elements of "statutory rape" would vary from state to state based on state law. As the majority itself recognizes, *Taylor* instructs us to determine a "uniform definition" for an enumerated enhancement offense. The Supreme Court in *Taylor* found it "implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction." *Taylor v. United States*, 495 U.S. 575, 590 (1990). Here, there is likewise no reason to believe that either Congress or the Sentencing Commission intended for the definition of "statutory rape" in the § 2L1.2 "crime of violence" enhancement to depend on the definition adopted by each state.

Such a definition fits awkwardly into the four-step analysis adopted by the

11-20881

majority. Under this analysis, the third step is to derive the generic meaning of an offense and the fourth step is to "look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category." The generic definition derived in the third step is to be the yardstick by which the state statute is measured. However, the majority has crafted a yardstick that varies according to what is being measured.[3]

As the majority states, the "common usage" of "statutory rape" denotes sexual intercourse with a person under the age of consent. If we are to derive a generic definition of "statutory rape," we cannot avoid defining this age of consent in a way that does not depend on state law. I agree with the conclusion reached by the Ninth Circuit: "While it is true that the age of consent may vary according to individual state statutes, the 'usual' definition is sixteen years old." *United States v. Rodriguez-Guzman*, 506 F.3d 738, 746 (9th Cir. 2007).

## IV.    "Sexual abuse of a minor"

Because Rodriguez takes issue only with the definition of the term "minor," the court does not consider the meaning of the terms "sexual" and "abuse." Accordingly, the court does not hold that sexual intercourse between a sixteen-year-old and a nineteen-year-old involving actual consent – which would be prohibited under Texas Penal Code § 22.011(a)(2) – constitutes "sexual abuse." Because I agree with the majority's analysis rejecting Rodriguez's challenge to the definition of the term "minor," I concur in the judgment of the court.

---

[3] Although a definition based on "common usage" differs in some ways from a *Taylor*-type definition that sets forth the elements of a single offense, it can and must still be uniform. For example, with respect to "sexual abuse of a minor," the words "sexual," "abuse," and "minor" can be defined according to common usage. Although many different state crimes may fall into the category because they involve sexually abusive conduct toward a minor, the definitions of the words remain the same and serve as a fixed yardstick by which to measure the state offenses.

DENNIS, Circuit Judge, dissenting:

I respectfully dissent.  I do not believe that the district court's imposition of the "crime of violence" sentencing enhancement was permissible under a proper interpretation of either "statutory rape" or "sexual abuse of a minor" under the sentencing guidelines.  *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii) & cmt. n.1(B)(iii).

## I

First, I disagree with the majority's novel "plain meaning" approach for deriving a generic definition of "statutory rape" and the unprecedented interpretation it adopts.  Rather than ascertaining the elements of the generic predicate offense from the relevant contemporary authorities as the Supreme Court has instructed, *Taylor v. United States*, 495 U.S. 575, 598-99 (1990); *see United States v. Lopez-DeLeon*, 513 F.3d 472, 474-75 (5th Cir. 2008), it seems to me that the majority instead turns on its head the notion of a reasonably uniform, generic federal definition by making age of consent a variable to be supplied exclusively by state law.  The majority asserts that we join "a majority of circuits" in departing from *Taylor* and applying a dictionary-only approach to ascertaining generic, contemporary meaning. Maj. Op. at 12.  Notably, however, the majority fails to cite any case applying such an approach to the "statutory rape" predicate.  *See id.* at 12-13 & nn.13-15.  And no other court has adopted the unprecedented, variable interpretation of that predicate that the majority invents today.  The majority's "plain meaning" approach lacks disciplinary content and cannot help but reduce uniformity and fairness in federal sentencing.  It is not this court's place to overrule *Taylor*'s approach to defining generic predicate offenses under the guidelines.

"The [Sentencing] Guidelines were enacted to bring uniformity and predictability to sentencing.'" *United States v. Gonzalez-Ramirez*, 477 F.3d 310, 313 (5th Cir. 2007) (emphasis added) (quoting *United States v. Ashburn*, 20 F.3d

1336, 1347 (5th Cir. 1994)); *see also, e.g.*, *Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012) (refusing to adopt an interpretation that "would seriously undermine basic Federal Sentencing Guidelines objectives such as uniformity"). Interpreting the generic, categorical meaning of "statutory rape" so as accommodate any state law definition seems to me to undermine this goal.[1] I believe that the majority errs in elevating generalized notions of "cooperative federalism" over the concrete need to employ a uniform interpretation of the predicate guidelines offense. *See* Maj. Op. at 20.[2]

In a persuasive recent opinion by Judge Wilkinson, the Fourth Circuit applied the established *Taylor* analysis previously applied by the Ninth Circuit and a panel of this court and likewise concluded "that the 'generic, contemporary meaning' of statutory rape sets the general age of consent at sixteen years old." *United States v. Rangel-Castaneda*, --- F.3d ----, 2013 WL 829149, at *1 (4th Cir. Mar. 7, 2013); *see Lopez-DeLeon*, 513 F.3d at 474-75 ("reviewing the Model Penal Code (MPC), treatises, modern state codes, and dictionaries" and "conclud[ing]

---

[1] *See United States v. Rangel-Castaneda*, --- F.3d ----, 2013 WL 829149, at *1 (4th Cir. Mar. 7, 2013) ("[W]e note the importance of achieving some degree of uniformity in applying the United States Sentencing Guidelines across the nation, particularly with respect to an element as crucial as the age of consent is for the crime of statutory rape."); *cf. United States v. Shannon*, 110 F.3d 382, 386 (7th Cir. 1997) ("To make the answer to the question whether felonious sex with a minor is a crime of violence a mechanical function of the laws of the different states would . . . undermine the guidelines' goal of bringing about a reasonable uniformity in federal sentencing; and would treat 'crime of violence' as a question of state rather than federal law."), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008), *as explained in United States v. McDonald*, 592 F.3d 808, 813-14 (7th Cir. 2010).

[2] *See Rangel-Castaneda*, 2013 WL 829149, at *5 ("Our federal system allows the various states to define offenses as they see fit, unencumbered by overly stringent federal sentencing standards. That is precisely why 'minor variations in terminology' must be respected. *Taylor*, 495 U.S. at 599. Accordingly, [each state] retains the ability to define the state crime of statutory rape in the manner it desires. And yet, when it comes to the common meaning of that offense for federal sentencing enhancement purposes, the gap between an age of consent of sixteen versus eighteen is simply too consequential to disregard, and the majority of states adopting the former age is too extensive to reject. Because of the competing concern for uniformity among sentences imposed by federal courts across the nation, we must accept this broad consensus as stating the generic definition of statutory rape.").

that the ordinary, contemporary, and common meaning of minor, or 'age of consent' for purposes of a statutory rape analysis, is sixteen"); *United States v. Rodriguez-Guzman*, 506 F.3d 738, 746 (9th Cir. 2007) (concluding that "[b]ecause [the same California statutory rape law analyzed in *Lopez-DeLeon*] establishes eighteen as the age of consent, it is overly inclusive of the generic federal definition of statutory rape"). I agree with the reasoning and holding of *Rangel-Castaneda*, in which the court explained as follows:

> Employing the "categorical approach" for assessing the applicability of enhancements, as articulated in *Taylor v. United States*, 495 U.S. 575 (1990), we find that the "generic, contemporary meaning" of statutory rape sets the general age of consent at sixteen years old. In so holding, we note the importance of achieving some degree of uniformity in applying the United States Sentencing Guidelines across the nation, particularly with respect to an element as crucial as the age of consent is for the crime of statutory rape. Because Tennessee's statutory rape provision sets the age of consent at eighteen and is therefore significantly broader than the generic offense, we hold that a conviction thereunder does not categorically qualify for the crime-of-violence enhancement. . . .
>
> Because the age of consent is central to the conception of statutory rape in every jurisdiction across the country and because the contrast between age sixteen and age eighteen is highly consequential, the divergence engenders dramatically different crimes. In other words, conduct that is perfectly legal for some people could subject many others in neighboring states to years upon years in federal prison. This, of course, is the sort of unjust and "odd result[]" that *Taylor* intended to preclude by holding that enhancement predicates "must have some uniform definition independent of the labels employed by the various States' criminal codes."

*Rangel-Castaneda*, 2013 WL 829149, at *1, 4.

I believe that the Fourth Circuit in *Rangel-Castaneda* applied the correct method to arrive at the appropriate generic definition. Accordingly, I respectfully dissent from the contrary decision of today's majority to adopt an interpretation of the "statutory rape" predicate that varies state by state, rather

11-20881

than a uniform federal age of consent of sixteen informed by the clear consensus of modern state criminal codes and other contemporary authorities.[3]

## II

Second, I do not believe that the crime of violence enhancement may be affirmed under the alternative heading of "sexual abuse of a minor." As this court noted in *Lopez-DeLeon*, and as the Fourth Circuit similarly observed in *Rangel-Castaneda*, the proper focus in a § 2L1.2(b)(1)(A)(ii) "crime of violence" analysis involving a defendant's prior conviction of a state "[s]tatutory rape law[]" — i.e., a law that "define[s] the age below which a person is legally incapable of consenting to sexual activity," *Lopez-DeLeon*, 513 F.3d at 474 — is whether it constitutes the enumerated guidelines offense of "statutory rape," rather than whether it falls within the distinct category of "sexual abuse of a minor." *See id.* at 474 n.2 ("Our determination focuses on the enumerated offense of 'statutory rape' rather than 'sexual abuse of a minor' because courts have recognized that section § 261.5(c) is California's codification of its statutory rape statute."); *see also Rangel-Castaneda*, 2013 WL 829149, at *3 ("Our analysis focuses on the particular crime at issue in this case — statutory rape."); *cf. id.* at *6 ("The government does not attempt to defend the district court's judgment on the ground that Rangel's statutory rape conviction qualified as a forcible sex offense. And for good reason. To begin with, the statutory rape provision in the crime-of-violence enhancement addresses precisely and specifically the situation before us.").

In *Rangel-Castaneda*, the government argued that even if the defendant's prior conviction under a Tennessee statutory rape law did not fall within the

---

[3] *See, e.g.*, *Rangel-Castaneda*, 2013 WL 829149, at *4 ("[I]n defining what in common parlance constitutes statutory rape, a robust majority of American jurisdictions — the federal government, thirty-two states, and the District of Columbia — has set the general age of consent precisely at sixteen years old." (citing statutes)).

generic, contemporary definition of "statutory rape," nonetheless "the same sixteen-level crime-of-violence enhancement applies because [the] conviction qualifies as 'sexual abuse of a minor.'" *Rangel-Castaneda*, 2013 WL 829149, at *6. I believe the Fourth Circuit correctly rejected that argument:

> It is tautological to state that "sexual abuse of a minor" requires that the victim be a minor. And while the precise age denoted by the word "minor" may vary depending on the legal context, that age is sixteen for purposes of this enhancement [because] . . . a large majority of jurisdictions sets the age at which an individual is legally capable of consenting to sexual relationships at sixteen, as discussed above with respect to statutory rape. It would seem discordant to hold that the same conduct that is deemed consensual for purposes of one qualifying predicate could somehow be deemed criminally abusive for purposes of another predicate. Relying on the general age of consent for the generic definition of statutory rape therefore precludes actions that involve only individuals who are above age sixteen from constituting "sexual abuse of a minor." *See Estrada–Espinoza v. Mukasey*, 546 F.3d 1147, 1152–53 (9th Cir. 2008) (en banc) (interpreting "sexual abuse of a minor" in 8 U.S.C. § 1101(a)(43)(A) to require that the victim be less than sixteen on account, inter alia, of the age of consent for the generic definition of statutory rape), *overruled on other grounds by United States v. Aguila–Montes de Oca*, 655 F.3d 915, 926–28 (9th Cir. 2011) (en banc). We do not attempt to establish a global definition of a "sexual abuse of a minor" offense. In other words, rather than set out what "sexual abuse of a minor" *can* mean, we simply note one particular thing that it *cannot* mean.

*Id.* Here too, one need not define with certainty the contours of the "sexual abuse of a minor" category to recognize that it cannot include a prior conviction for statutory rape, at least under a non-generic state statute.[4] This view accords

---

[4] I do not suggest that "sexual abuse of a minor" categorically excludes convictions under state sex offenses that have as an element an age threshold above sixteen and *also* additional or aggravating elements aside from the victim's age, such as state laws criminalizing sexual depradation by a parent on a child. *See Rangel-Castaneda*, 2013 WL 829149, at *4 n.1 ("In discussing the *general* age of consent here and elsewhere, we do not address state code provisions establishing a higher age of consent in *specific* factual circumstances, such as where defendants are in positions of authority over their victims.").

with the sound interpretive principle that the guidelines definition of "crime of violence" should not be interpreted so as to render the term "statutory rape" superfluous.[5]

Thus, having concluded that Rodriguez's conviction does not fall within the generic, contemporary meaning of "statutory rape," I would also reject the government's attempt to defend the imposition of the enhancement under the label of "sexual abuse of a minor."

## III

Finally, I must express my disagreement with certain dicta in the majority opinion regarding the categorical approach more generally. My colleagues in the majority are apparently "skeptical that" the categorical approach dictated by "*Taylor* and its progeny lead[s] to reasonable results"; they complain that the Supreme Court's insistence upon "[r]ooting the crime-of-violence determination strictly in the elements of the statute alone has required us to perform gymnastics when evaluating when a defendant's prior conviction constitutes a crime-of-violence under the Guidelines." Maj. Op. at 26 n.22; *see also id.* at 4 n.2 (asserting that the constraints of "the categorical and modified-categorical approach in its current form" — whereby we analyze and classify the conviction, rather than the underlying facts or allegations, result in "confusion and

---

[5] We have repeatedly stated "that the Guidelines are subject to rules of statutory construction and interpretation." *United States v. Dominguez-Alvarado*, 695 F.3d 324, 329 (5th Cir. 2012); *see United States v. Rayo–Valdez*, 302 F.3d 313, 318 (5th Cir. 2002); *United States v. Vickers*, 891 F.2d 86, 88 (5th Cir. 1989). Thus, "[w]hen interpreting the Guidelines, 'it is necessary to give meaning to all its words and to render none superfluous.'" *Dominguez-Alvarado*, 695 F.3d at 329 (5th Cir. 2012) (quoting *Rayo–Valdez*, 302 F.3d at 318); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). The commentary's use of the disjunctive underscores the need to construe the listed categories as bearing distinct meanings. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise[] . . . ."); *accord, e.g.*, *United States v. Canada*, 110 F.3d 260, 264 (5th Cir. 1997).

gymnastics"); *but see* U.S.S.G. 2L1.2(b)(1)(A)(ii) (premising the sentencing enhancement on "a *conviction* for a felony that is . . . a crime of violence" (emphasis added)). I strongly disagree with this sentiment, and I worry that my colleagues have forgotten that "[a]mong the considerations that led the *Taylor* court to conclude that a categorical approach to prior convictions was necessary were concerns about the practical difficulties and fairness problems that would arise if courts were permitted to consider the facts behind prior convictions." *See Arguelles-Olivares v. Mukasey*, 526 F.3d 171, 184 (5th Cir. 2008) (citing *Taylor*, 495 U.S. at 601); *Larin-Ulloa v. Gonzalez*, 462 F.3d 456, 463 (5th Cir. 2006).

I do not share the majority's apparent sense of chafing under the constraints that follow from taking seriously these concerns. To the contrary, I believe the rigors of the categorical approach to be both principled and workable. *Taylor* made clear that a standard approach to classifying past convictions is essential to fair and uniform federal sentencing. *Taylor*, 495 U.S. at 601-02; *see, e.g.*, *Perez-Gonzalez v. Holder*, 667 F.3d 622, 629 (5th Cir. 2012) (Jones, C.J., dissenting) (noting "the benefit of 'lenity' inhering in the . . . categorical approach" and acknowledging that it is appropriate "for the law, guided by the due process clause and the rule of lenity, to give a criminal defendant the benefit of the . . . categorical approach for purposes of enhanced sentencing"). Once again, I find myself in agreement with Judge Wilkinson, writing for the Fourth Circuit in *Rangel-Castaneda*, who observed:

> It may be that, although a consensus-based analysis ultimately aids the defendant in the case at bar, the approach can cut both ways. To wit, if the majority of states subscribes to a broad definition of an offense enumerated in a federal sentencing enhancement, a defendant convicted in one of those jurisdictions might not be able to avoid the enhancement by pointing to a minority view defining the offense more narrowly. Be that as it may, our task is to apply the *Taylor* decision in a neutral manner.

*Rangel-Castaneda*, 2013 WL 829149, at \*5. With all due respect to my

colleagues, it is not our place to eschew faithful application of the disciplined analysis required by precedent merely because some may become "skeptical" when it produces results favorable to criminal defendants.

## IV

For the foregoing reasons, I would vacate Rodriguez's sentence and remand for resentencing. Because the court today reaches a contrary result, I respectfully dissent.